**Lois Jean SHOOK, Plaintiff,**

v.

**STATE FARM MUTUAL INSURANCE COMPANY OF BLOOMINGTON, ILLINOIS, a Corporation, Defendant.**

**No. CV–92–154–GF.**

United States District Court,
D. Montana,
Great Falls Division.

Sept. 6, 1994.

Ross W. Cannon, Cannon & Sheehy, Helena, MT, for plaintiff.

William P. Conklin, Conklin, Nybo, LeVeque & Murphy, PC, Great Falls, MT, for defendant.

### MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

This declaratory judgment action places in issue both the validity of, and the interpretation to be afforded a "household exclusion" contained in an automobile liability policy issued by the defendant, State Farm Mutual Insurance Company, to Terry Evan Shook and Lois Jean Shook, husband and wife. State Farm has presented the court with a motion, pursuant to Fed.R.Civ.P. 12(b)(6), re-

questing the court to declare the exclusion valid and dismiss the action upon the ground it fails to state a claim upon which relief can be granted. The motion is appropriately DENIED.

## BACKGROUND

In late 1991, Terry was driving the Shook family vehicle with Lois as a passenger, when the vehicle was involved in an accident. At the time of the accident, the Shooks were the named insureds on an automobile liability policy issued to them by State Farm. The policy had a provision for bodily injury liability coverage with limits of $100,000/$300,000. Subsequent to the accident, Lois, asserting Terry was responsible for the accident, presented a claim to State Farm seeking $100,000 for the injuries she sustained in the accident.

Relying upon a "household exclusion" contained in the liability policy, State Farm tendered $25,000 to Lois, the maximum amount of coverage State Farm contended Lois was entitled to under the terms of the policy.[1] State Farm adopted the position the exclusion operated to limit the coverage available to Terry, for any liability that would accrue to him for any bodily injuries Lois may have sustained, to $25,000, the minimum liability limits required under Montana's mandatory insurance law.[2] This declaratory judgment action ensued.

Lois obviously disputes State Farm's construction of the liability provisions of the insurance contract. Her challenge to State Farm's position is two-fold. First, Lois argues the exclusion must be declared invalid and unenforceable because it violates the public policy of the State of Montana of providing adequate compensation to the insured victims of automobile accidents.[3] Second, Lois contends State Farm's interpretation of the household exclusion must be rejected as contrary to the reasonable expectations of the insured.

The issues presented for determination may be succinctly stated as follows:

(i) is a typical "household exclusion" provision in an automobile liability policy, which operates to exclude coverage for bodily injury sustained by any insured or any member of the insured's household, void as against the public policy of the State of Montana?

(ii) does the "household exclusion" contained in the subject policy operate to defeat the "reasonable expectations" of the insured?

## DISCUSSION

Title 61, Chapter 6, Part 3, Mont.Code Ann., "Mandatory Liability Protection", and more particularly section 61–6–301 requires "every owner of a motor vehicle registered and operated in Montana by the owner or with his permission [is] to provide insurance for liability caused by maintenance or use of

---

1. In addition to the limitations of coverage, the liability provisions of the policy included a "household exclusion" set forth in the following terms:

    There is no coverage:
    2. For any bodily injury to:
    c. any **insured** or any member of the **insured's** family residing in the **insured's** household to the extent the limits of liability of this policy exceed the limits of liability required by law.

2. The minimum liability coverage requirements in Montana are established by the Motor Vehicle Safety—Responsibility Act, codified at Mont. Code Ann. §§ 61–6–101, *et. seq.* (1987). Section 61–6–103(2)(b) sets forth the minimum liability limits allowed by law:

    (i) $25,000 because of bodily injury to or death of any one person in any one accident and subject to said limit for one person;

(ii) $50,000 because of bodily injury to or death of two or more persons in any one accident;

3. Lois also challenges the validity of the exclusion as violative of public policy in the following respects: (i) the exclusion operates to unfairly discriminate against individuals based upon their marital status in violation of Mont.Code Ann. § 49–2–309 (1991); and (ii) operates, in violation of Mont.Code Ann. § 33–18–210(3) (1991), to discriminate between insureds having like insuring or risk characteristics.

The court is unpersuaded by either of these arguments. Lois presents no evidence suggesting a married individual pays the same premium for *less* coverage than a non-married individual. Likewise, no evidence is presented suggesting the premiums are set in a discriminatory manner, or are at all related to the number of individuals residing in the named insured's "household".

the motor vehicle." With minimum liability limits as follows:

  (i) $25,000 because of bodily injury to or death of any one person in any one accident and subject to said limit for one person; (ii) $50,000 because of bodily injury to or death of two or more persons in any one accident.

Enactment of this statutory law requiring mandatory liability protection is of singular importance in determining the validity of any exclusion contained in a motor vehicle liability insurance policy, since an exclusion may not operate in a fashion which is "repugnant to [the State of Montana's] interest in protecting innocent victims of automobile accidents." *Iowa Mutual Ins. Co. v. Davis*, 231 Mont. 166, 752 P.2d 166, 171 (1988).

Prior to the 1979 enactment of Mont.Code Ann. § 61–6–103 establishing mandatory liability protection, "household exclusions" contained in ordinary automobile liability insurance policies—policies carried voluntarily by automobile owners—were not viewed as contravening the public policy of the State of Montana. *See, Mid–Century Ins. Co. v. American Casualty Co.*, 152 Mont. 328, 449 P.2d 679 (1969). However, subsequent to the enactment of section 61–6–103, the Montana Supreme Court declared that the "[Montana] Legislature has expressly outlawed the 'household exclusion'." *Transamerica Ins. Co. v. Royle*, 202 Mont. 173, 656 P.2d 820, 823 (1983).[4] The court viewed its conclusion as necessarily consistent with the requirement embodied in the mandatory insurance law, *i.e.*, that every liability insurance policy certified under the law protect against bodily injury and damage to "any person". 656 P.2d at 823.[5] In concluding its opinion, the

court stated: "We must hold that a family exclusion clause is void and unenforceable because section 61–6–301(1) M.C.A., requires motorists to carry insurance against loss resulting from liability imposed by law for injuries suffered by any person." 656 P.2d at 824.

More recently, in *Iowa Mutual Ins. Co. v. Davis*, 231 Mont. 166, 752 P.2d 166 (1988), the Montana Supreme Court had occasion to address the effect of Montana's mandatory insurance protection laws upon the validity of a liability insurance policy exclusion, more particularly, a "named driver" exclusion. Emphasizing that insurance policy provisions which "countermand or diminish the requirements of section 61–6–301(1) would be considered, notwithstanding their express language, to provide the statutory requirements", the court held that section 61–6–301 prohibited the exclusion of named drivers from statutory minimum coverage under a motor vehicle liability policy. 752 P.2d at 169–171. The court, however, hastened to make the following statement:

  Our ruling does not, however, prohibit an insurer from entering into agreements with their insureds to limit coverage to the statutory minimum amounts as set forth in section 61–6–103, M.C.A.

752 P.2d at 170.

■ The rationale underlying the Montana Supreme Court's decisions in *Royle* and *Davis* establishes that an exclusionary endorsement contained in a motor vehicle liability insurance policy is not *per se* void and unenforceable. Rather, the endorsement is unenforceable to the extent the endorsement attempts to exclude the minimum liability

---

4. In a correlative holding, the court in *Royle* abrogated the doctrine of parental immunity in "cases involving parental negligence in the operation of a motor vehicle." 656 P.2d at 824. It is imperative to note, for purposes of the present analysis, that the Montana Supreme Court, likewise, abolished the defense of inter-spousal tort immunity in cases involving the negligent operation of a motor vehicle. *Miller v. Fallon County*, 222 Mont. 214, 721 P.2d 342 (1986).

5. The court in *Royle* also held, as an alternate basis for its decision invalidating the "household exclusion" clause, that the clause failed to " 'honor the reasonable expectations' of the pur-

chaser of the policy." 656 P.2d at 824. The court did not, however, undertake to elaborate upon its rationale, other than to quote Professor Keeton's now renowned article on the doctrine, as follows:

  The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.

Keeton, *Insurance Law Rights at Variance With Policy Provisions*, 83 Harv.L.Rev. 961, 972 (1970). 656 P.2d at 824.

coverage mandated by Mont.Code Ann. § 61–6–301.

■ Montana's mandatory insurance law was designed to protect the public from uncompensated losses arising from the operation of a motor vehicle. *Guaranty National Ins. Co. v. Kemper Financial Services*, 667 F.Supp. 714 (D.Mont.1987). The public concern is satisfied where the motor vehicle owner provides liability coverage to the extent required by law. *Id., citing, Ins. Co. of North America v. Avis Rent-a-Car System, Inc.*, 348 So.2d 1149 (Fla.1977); *Cailson v. Nationwide Ins. Co.*, 243 S.E.2d 429 (No.Car. 1977); *Balboa Ins. Co. v. State Farm Mutual Automobile Ins. Co.*, 17 Ariz.App. 157, 496

P.2d 147 (1972); *but see, Smith v. National Indemnity Co.*, 57 Wis.2d 706, 205 N.W.2d 365 (1973).[6] Having satisfied, through the terms of a motor vehicle liability insurance policy, the minimum statutory requirements, an insurer and its insured are free to enter agreements limiting coverage under a liability insurance policy, to the extent the agreements are otherwise valid under the law. *See, Davis*, 752 P.2d at 170; *Mid–Century Ins. Co. v. American Casualty Co.*, 449 P.2d at 682.[7] Consequently, an exclusionary endorsement which operates to limit coverage to the statutory minimum amounts established by Mont.Code Ann. § 61–6–301 is not violative of the public policy inherent in Montana's mandatory insurance law.[8]

6. The statutorily mandated minimum amount of liability coverage may well be inadequate as a matter of economic reality. The determination of what statutory minimum amount will ensure the existence of a source of money sufficient to protect the innocent victim of an automobile accident from uncompensated losses must, however, be made through the legislative process.

7. The distinction between the modified "household exclusion" under scrutiny in this action and the "household exclusion" traditionally utilized in automobile liability policies prior to the enactment of financial responsibility acts by the various states, including Montana, must be reiterated. The exclusion at issue in *Royle* was of the traditional type designed to completely exclude coverage for a member of the insured's household. 656 P.2d at 821. There exists no suggestion in the court's opinion in *Royle* that the exclusion was void only in relation to the mandatory minimum liability coverage required by law.

The importance of the distinction is further magnified by the citation in *Davis* to *Allstate Ins. Co. v. U.S. Fidelity & Guaranty Co.*, 619 P.2d 329 (Utah 1980). In *Allstate*, the Utah court held a traditional named driver exclusion was void as against public policy, but only in relation to the mandatory minimum liability coverage required under Utah law. 619 P.2d at 333 (*citing, Neal v. Farmers Ins. Exchange*, 93 Nev. 348, 566 P.2d 81 (1977) ("household exclusion" endorsement declared invalid)). By recognizing the viability of the exclusionary clause beyond the mandatory minimum liability coverage, the Utah court effectively reformed the exclusionary endorsement. This court, however, is of the opinion reformation of the exclusionary clause upon this basis is improper. *See, e.g., State Farm Automobile Ins. Co. v. Wagamon*, 541 A.2d 557 (Del.1988). Furthermore, the court finds that *Royle* and *Davis* should not be read to suggest the Montana Supreme Court would endorse this approach. Consequently, the court emphasizes that its discussion in this case pertains strictly to the validity of

an exclusion which establishes limits through a specific reference to the mandatory minimum coverage mandated by statute.

8. The plaintiff suggests this court should predict the Montana Supreme Court would endorse the rationale of those courts that have viewed "household exclusion" clauses as invalid. *See, e.g., State Farm Mutual Automobile Ins. Co. v. Wagamon, supra; Farmers Ins. Exchange v. Call*, 712 P.2d 231 (Utah 1985); *Hughes v. State Farm Mutual Auto Ins. Co.*, 236 N.W.2d 870 (N.D. 1975). The decision of the Montana Supreme Court in *Davis*, however, reflects the balance struck by the court between the right to freedom of contract enjoyed by the insurer and insured, and the public interest in protecting innocent victims from uncompensated losses.

What is equally clear, however, is the public policy of the State of Montana, as embodied in the doctrine of "reasonable expectations" endorsed by the Montana Supreme Court, which recognizes an insured is entitled to fully expect the coverage provided by a policy will be consistent with the language of the policy as understood by the average consumer. *See, Royle*, 656 P.2d at 824; *Wellcome v. Home Ins. Co.*, 257 Mont. 354, 849 P.2d 190 (1993). Stated another way, the insured has the right to make an informed decision regarding the security he will purchase for himself and his family, and an insurance company, granted the privilege to market its product in the State of Montana, will not be allowed to vitiate that right through the utilization of a policy that creates ambiguity regarding the coverage afforded. If an insurance company chooses to market a policy that contains a "household" exclusion, the doctrine simply mandates the language of the policy and the declaration page attendant to the policy clearly advise the insured that he has purchased a policy that will not provide coverage to members of his household for damages they may sustain as a result of the insured's negligent operation of the

The court now turns to consider the second issue presented for determination, *i.e.,* whether the "household exclusion" at issue is invalid due to its failure to honor the "reasonable expectations" of the named insureds under the policy.

■ One of the major concerns which led to the evolution of the "reasonable expectations" doctrine was a desire to protect an insured, unfamiliar with the technical terms utilized in most insurance policies, from having insurance coverage diluted by application of technical and confusing policy provisions. *See,* n. 1, *supra.* Although the Montana Supreme Court in *Royle,* acknowledged the vitality of the "reasonable expectations" doctrine in Montana, it never undertook to define its precise dimensions. 656 P.2d at 824. A limited number of jurisdictions have extended the doctrine to all questions of insurance coverage, whether or not ambiguities exist in the language of the contract. *See, e.g., Corgatelli v. Globe Life Ins. Co.,* 96 Idaho 616, 533 P.2d 737 (1975). This extension, however, appears to be the minority view. *Auto–Owners Ins. Co. v. Jensen,* 667 F.2d 714, 721, n. 9 (8th Cir.1981). In the majority of jurisdictions, the doctrine has been utilized to resolve ambiguities in insurance policies in order that the policies comport with the insureds' "reasonable expectations". *See, Auto–Owners Ins. Co. v. Jensen,* 667 F.2d at 721; *Progressive Casualty Ins. Co. v. Marnel,* 587 F.Supp. 622 (D.Conn. 1983); *Wilson v. Ins. Co. of No.Am.,* 453 F.Supp. 732 (N.D.Cal.1978). Well established precedent indicates Montana follows the majority position.

■ Construction of insurance contracts in Montana is governed by the general law of contract interpretation contained in Title 28, Chapter 3, Montana Code Annotated, and the case law which has developed thereunder in the context of insurance. The Montana Supreme Court has stated that the intention of the parties to the contract is not to be inquired into unless there is ambiguity on the face of the contract. *Schell v. Peters,* 147 Mont. 21, 410 P.2d 152, 155 (1966). Accordingly, where the language of an insurance policy admits of only one meaning, there is no basis for interpretation of the policy coverage under the guise of ambiguity. *Universal Underwriters Ins. Co. v. State Farm Mutual Automobile Ins. Co.,* 166 Mont. 128, 531 P.2d 668 (1975).

■ Under Montana law, the interpretation of a contract's language and whether an ambiguity exists is a question to be determined, in the first instance, by the court. *United States Fidelity & Guaranty Co. v. Newman,* 656 F.2d 457, 459 (9th Cir.1981), *citing, McNussen v. Graybeal,* 146 Mont. 173, 405 P.2d 447, 454 (1965). Furthermore, "ambiguity does not exist just because a claimant says so. It can only exist where the wording or phraseology of the contract is reasonably subject to two different interpretations." *Holmstrom v. Mutual Benefit Health & Accident Assn.,* 139 Mont. 426, 364 P.2d 1065, 1066 (1961).

■ In determining whether an ambiguity exists in an insurance contract, the court remains mindful of two well-established principles to be followed in interpreting an insurance contract. First, the terms are to be interpreted according to what a "reasonable person in the position of an insured would understand them to mean." *St. Paul Fire & Marine Ins. Co. v. Thompson,* 150 Mont. 182, 433 P.2d 795, 798 (1967). Restated, the determination of whether an ambiguity exists in an insurance policy requires an examination of the language utilized from the viewpoint of a consumer of average intelligence, not trained in the law or in the insurance business. *See, e.g., Whispering Creek Condominium Owner Assoc. v. Alaska National Co.,* 774 P.2d 176 (Ala.1989); *Sparks v. Republic National Life Ins. Co.,* 132 Ariz. 529, 647 P.2d 1127 (1982), *cert. denied,* 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982). Second, "exclusions and words of limitation in a policy must be strictly construed against the insurer regardless of whether or not they are ambiguous." *Aetna Ins. Co. v. Cameron,*

---

designated vehicle(s). The requirement placed upon the insurer can hardly be characterized as onerous, when considered in light of the important decision the insured must make in purchasing a policy that provides the security deemed necessary by the insured to protect himself and his family.

194 Mont. 219, 633 P.2d 1212, 1214 (1981); *see also, Farmers Union Mutual Ins. Co. v. Oakland,* 251 Mont. 352, 825 P.2d 554 (1992). Armed with these rules of construction, the court turns to determine whether an ambiguity exists in the liability policy at issue.

■ The declaration page of the Shook policy indicated the existence of general liability coverage in the amount of $100,000 per person, and $300,000 per occurrence. The provisions of the policy pertaining to liability coverage state, in pertinent part, as follows:

We [State Farm] will:

1. pay damages which an *insured* becomes legally liable to pay because of:

   a. bodily injury *to others,* and

   b. damage to or destruction of property including loss of its use, caused by accident resulting from the ownership, maintenance or use of *your car;* ....[9]

In addition to the limitations of coverage, the liability provisions of the policy included a "household exclusion". The terms of the exclusion are appropriately reiterated:

When Coverage A Does Not Apply:

There Is No Coverage:

.   .   .   .   .

2. For Any *Bodily Injury* to:

   a. ...

   b. ...

   c. *any insured* or any member of *an insured's* family residing in the *insured's* household to the extent the limits of liability of this policy exceed the limits of liability required by law.

In determining whether the "reasonable expectations" doctrine is applicable to this case, the court first reviews the observations offered by the court in *Royle;* the case in which the Montana Supreme Court first recognized the validity of the doctrine in Montana. 656 P.2d at 824; *see also, Wellcome v. The Home Ins. Co.,* 849 P.2d at 193. As noted, the court's discussion of the doctrine's application to the facts before it in *Royle* was limited. 656 P.2d at 824. In fact, the court simply stated the "household exclusion" at issue in that case was "invalid due to its failure to 'honor the reasonable expectations' of the purchaser of the policy ...; [a] policy [that] is an adhesion contract that justifies this Court's consideration of the consumer approach." 656 P.2d at 824.[10] Nonetheless, it is clear the exclusion in *Royle* was found by the court to be invalid because it did not honor the reasonable expectations of the purchaser of the policy. The reasonable expectations are, of course, to be measured from the perspective of the purchaser of the policy; as the one who would be liable to respond in damages to the claimant. The objectively reasonable expectations of the purchaser are "honored [in Montana] notwithstanding the fact that a 'painstaking study' of the policy would [negate] those expectations." *Wellcome v. The Home Ins. Co.,* 849 P.2d at 193 (*citing, Royle,* 656 P.2d at 824).

The determination of whether the expectations of the purchaser of an insurance policy are objectively reasonable must begin with an assessment of the nature of the security which a reasonably prudent layman would understand the policy is generally designed to provide. *See, State Farm Mutual Automobile Ins. Cos. v. Queen,* 212 Mont. 62, 685 P.2d 935 (1984); *State Farm Mutual Automobile Ins. Co. v. Wilson,* 162 Ariz. 251, 782 P.2d 727 (1989). The language employed in the policy must then be reviewed, in light of the policy's purpose, to determine whether the language is clear and subject to only one

---

9. The definition provisions of the policy define, *inter alia,* the following terms:

Bodily injury—means bodily injury to a *person* and sickness, disease or death which results from it.
Your car—means the *car* or the *vehicle* described on the declarations page.

10. The "household exclusion" clause at issue in *Royle* excluded coverage for "bodily injury to any person who is related by blood, marriage, or adoption to [the insured], if that person resides in [the insured's] household at the time of the loss." 656 P.2d at 821. The facts pertinent to the transaction underlying the decision in *Royle* were set forth by the Montana Supreme Court as follows:

On November 14, 1980, Mary Kay Haines was injured in an auto accident. She was a passenger in a car in which her mother was driving.... The car was owned by Mary Kay's father, ..., and was insured by Transamerica Insurance Company.

meaning or whether, from the perspective of the insured, the language is subject to differing interpretations. *See, Bauer Ranch Co., Inc. v. Mountain West Farm Bureau Mutual Ins. Co.*, 215 Mont. 153, 695 P.2d 1307 (1985); *State Farm Automobile Ins. Cos. v. Queen*, 685 P.2d at 937. If the language of the policy is capable of more than one construction, an ambiguity exists which must be construed against the insurer. *Bauer Ranch Co., Inc. v. Mountain West Farm Bureau Mutual Ins. Co.*, 695 P.2d at 1309; *Farmers Union Mutual Ins. Co. v. Oakland*, 825 P.2d at 556. At the same time, however, if the language employed in an insurance contract, and more particularly, an exclusion, is clear and unambiguous, the language controls, and an expectation which is contrary to the language is not "objectively reasonable". *See, Wellcome v. The Home Ins. Co.*, 849 P.2d at 193.

Read from the perspective of the Shooks, the language employed in the liability provisions of the subject policy establishes that the coverage was purchased for the purpose of providing a source of indemnification for damages that either of the Shooks would become legally liable to pay because of bodily injury to others and property damage "caused by accident resulting from the ownership ..." of their car.[11] Based upon this language, standing alone, it would be objectively reasonable for the Shooks to have expected each of them would be indemnified, to the stated limits, for any liability that would accrue to, or be imposed upon them for damages emanating from bodily injury to *any* person that was caused by either of the Shooks' operation of the insured vehicle.

Consequently, the determinative question in this case is whether the language of the "household exclusion" clearly and unambiguously excluded coverage for Terry Shook for any damages he would become legally liable to pay because of bodily injury sustained by Lois Shook "caused by accident resulting from [Terry Shook's] use" of the insured vehicle. Shook asserts the exclusion is ambiguous for two distinct reasons. First, she contends the structure of the policy, as a whole, renders the exclusion ambiguous. Second, she implicitly argues the exclusion clause itself is ambiguous.

Addressing the latter argument first, the court concludes the language of the exclusion, when read in light of the purpose of the policy, is capable of more than one construction. A reasonable person, reading the exclusion from the perspective of the Shooks, could interpret the exclusion to mean that there existed no coverage for bodily injury sustained by an insured (as defined in the liability coverage provisions of the policy) resulting from that insured's operation of a covered vehicle. A reasonable person, purchasing the policy for the purpose of providing a source of indemnification for damages he might become legally liable to pay, could legitimately interpret the language of the exclusion as intended to make clear the liability provisions of the policy do not provide personal accident insurance to any insured.

■ While the court is not persuaded by the argument of structural ambiguity presented by Shook, it does agree that the positioning of the exclusion, in relation to the general coverage provision, lends itself to the creation of the ambiguity in the exclusion.[12]

11. As previously noted, interspousal tort immunity is not recognized as a defense in Montana. *Miller v. Fallon County*, 222 Mont. 214, 721 P.2d 342, 345 (1986). A point of further note is that the Shooks are now divorced.

12. The court is mindful that an ambiguity is not created simply because a different structure could have been employed by the insurer that would have added clarity to the policy. However, given the indisputable importance of the household exclusion to the average consumer, the structure of the policy takes on added significance. *See, e.g., Gordinier v. Aetna Casualty & Surety Co.*, 154 Ariz. 266, 742 P.2d 277, 284–85 (1987).

In *Gordinier v. Aetna Casualty & Surety Co.*, the Arizona court established three rules relative to the determination of whether a structural ambiguity rendered a policy unenforceable:

(1) Although the provisions in question were unambiguous by themselves, the average consumer attempting to check on his or her rights could not readily understand them because of their location in the policy;

(2) The provision in question could be deemed unexpected or one that emasculated apparent coverage; and

(3) The provision may well have undercut the purpose of the transaction or even the dickered deal between the insureds and the insurer. 742 P.2d at 284–85.

The policy under scrutiny broadly proclaims in the general provisions relating to liability coverage that [State Farm] will:

1.  Pay damages for which an *insured* becomes legally liable to pay because of:

    a.  *bodily injury* to others, ...

The policy, however, separates the "household exclusion" both in space and relation to this broad proclamation of liability coverage.

In view of the emasculating effect the "household exclusion" has upon the security provided by a liability policy, the reasonable consumer would legitimately expect a caveat of that magnitude to be strategically located. The obscure positioning of the exclusion would lead a reasonable consumer to interpret the language of the exclusion in the most reasonably limited manner.

Therefore, for the reasons set forth herein,

IT IS HEREBY ORDERED that the defendant's motion to dismiss is DENIED.