No.  94-416 and 94-503

IN THE SUPREME COURT OF THE STATE OF MONTANA
1995

LESLIE LEIBRAND and LOIS LEIBRAND, individually, and as
the parents and next friends of GORDON LEIBRAND, a minor,

     Plaintiffs,

  v.

NATIONAL FARMERS UNION PROPERTY AND CASUALTY CO., a corporation,

     Defendant.

EUGENE COLE and MARY JO COLE, individually and as
next friends of LINDSEY COLE, a minor,

     Plaintiffs,

  v.

TRUCK INSURANCE EXCHANGE,

     Defendant.

FILED

JUL 06 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

CERTIFIED QUESTION FROM THE UNITED STATES DISTRICT COURT,
THE HONORABLE JACK D. SHANSTROM, JUDGE PRESIDING.

COUNSEL OF RECORD:

     For Plaintiffs:

          Ira D. Eakin, Lynaugh, Fitzgerald, Eiselein &
          Eakin, Billings, Montana (for Plaintiffs Leibrands)

          Steven J. Harman, Brown, Gerbase, Cebull,
          Fulton, Harman & Ross, Billings, Montana
          (for Plaintiffs Coles)

     For Defendants:

          Don M. Hayes, Herndon, Hartman, Sweeney
          & Halverson, Billings, Montana
          (for Defendant National Farmers Union)

          Shelton C. Williams and Richard Ranney,
          Williams & Ranney, Missoula, Montana
          (for Defendant Truck Insurance Exchange)

Submitted:  April 25, 1995
Decided:  July 6, 1995

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

These combined claims were either filed in or removed to the United States District Court for the District of Montana by the plaintiffs to recover the limits of liability coverage provided by the defendants pursuant to contracts of automobile liability insurance. The defendants denied that policy limits were recoverable, based on exclusions within each of the respective policies which limited recovery by a household member to the "limits of liability required by law." Pursuant to Rule 44, M.R.Civ.P., the United States District Court, in each case, certified the following question to this Court:

> Is the amendatory endorsement at issue here and set forth in the agreed facts below, valid and enforceable?

We accepted certification of this issue and ordered that the certified cases be consolidated. After considering the issue presented, we conclude that the amendatory endorsements at issue are not valid and enforceable.

## FACTUAL BACKGROUND

### *Leibrand v. National Farmers Union Property and Casualty Company*

The following facts have been agreed upon by the parties:

Leslie Leibrand and Lois Leibrand are husband and wife and are the parents of Gordon Leibrand. At all times relevant, they resided together as a family unit at their home in Scobey, Montana.

The Leibrands have been continuously insured pursuant to an automobile liability insurance policy issued by the defendant,

2

National Farmers Union Property and Casualty Company, since 1975. The "liability coverage" portion of that policy provided as follows:

> We will pay damages for which any insured person is legally liable because of bodily injury and property damage arising out of the ownership, maintenance or use of a car or a utility trailer.

"Insured person" was defined to include the named insureds (Leslie and Lois) or a relative. The limit of liability coverage available per occurrence for each individual injured was specified to be $100,000. The record does not indicate that there was any change in these general liability provisions during the term of the Leibrands' policy.

The Leibrands' policy originally included the following exclusion: "This coverage does not apply to . . . (10) bodily injury to any insured person."

In 1983, we decided *Transamerica Ins. v. Royle* (1983), 202 Mont. 173, 656 P.2d 820. In that case, we held that household exclusion clauses, like the one included in the Leibrand policy, were void and unenforceable, based on § 61-6-301(1), MCA, which requires that motorists carry insurance against loss resulting from liability suffered by <u>any person</u>. In 1991, when the Leibrands renewed their automobile insurance policy, they were provided with an "amendatory endorsement" which provided that:

> 1. Exclusion (10) under part 1, Liability, is replaced by the following:

(10) **bodily injury** to you or any **relative** to the extent the limits of liability of this policy exceed the limits of liability required by law.

At the time of subsequent policy renewals, the Leibrands were provided with a declarations page which stated that "[l]iability payments to household members are limited to the Financial Responsibility limits of the policy state."

On November 22, 1992, Gordon Leibrand was injured while riding in an insured vehicle being driven by his mother, Lois. He suffered injuries, which are alleged to be serious, and has sustained substantial damages. He has alleged that his damages resulted from Lois Leibrand's negligence. The Leibrands have made demand for payment to Gordon pursuant to their liability policy for the full $100,000 of coverage provided pursuant to the policy's general liability provisions. National Farmers Union has paid the sum of $25,000, but pursuant to its amendatory endorsement, has refused to pay any additional amount.

### Cole v. Truck Insurance Exchange

In this case, the parties have stipulated to the following facts:

The plaintiffs, Eugene Cole and Mary Jo Cole, are husband and wife and are the parents of Lindsey Cole. At all times relevant to their claim, the Coles have lived together as a family at their residence in Manhattan, Montana.

Prior to 1991, the Coles were insured by an automobile liability insurance policy issued by Truck Insurance Exchange. In

4

1991, they were issued a new policy by the same company which included the following language:

> We shall pay **damages** for which any **insured** is legally liable because of **bodily injury** or **property damage** caused by an **occurrence** arising out of the ownership, maintenance or use of any **automobile**.

Insureds were defined to include the policy holder, any family member, or any person under the age of 21 who was a resident of the policy holders' household.

The following exclusion was included in the 1991 policy:

> We do not cover Bodily Injury:

> . . . .

> 2. Arising out of the liability of any insured for bodily injury to you or a family member unless the law of the state where the insured resides specifically prohibits this exclusion.

Included with the 1991 policy was a document entitled "Endorsement S 7016, Montana First Edition." That endorsement provided that:

> Under Section II--Liability and Medical Coverage-- Exclusions--Coverage D1--Automobile Liability, Item 2 under "we do not cover bodily injury" is deleted and replaced as follows:

> 2. Arising out of the liability of any **insured** for **bodily injury** to you or a **family member** to the extent the limits of liability of this policy exceed the limits of liability required by law.

During each subsequent year, at the time of policy renewal, the Coles were provided with a "declarations page" which provided for bodily injury and property damage liability coverage in the amount of $500,000 for each occurrence.

5

On November 20, 1993, while the aforementioned policy was in effect, Lindsey Cole drove an insured vehicle into her mother and caused bodily injury which has resulted in medical expense in excess of $43,000. The Coles, on behalf of Mary Jo, have demanded that Truck Insurance Exchange pay her damages in the amount of the policy limits of $500,000. Truck Insurance Exchange has paid $25,000 to Mary Jo, but has denied further coverage based on the language in its endorsement S 7016.

Is the amendatory endorsement at issue here and set forth in the agreed facts valid and enforceable?

## SUMMARY OF POSITIONS

When discussed collectively, the Leibrands and the Coles will hereafter be referred to as "insureds." National Farmers Union Property and Casualty and Truck Insurance Exchange will be referred to as "insurers."

The insureds contend that the language in both policies which limits coverage for claims made by household members to the "limits of liability required by law," rather than the liability limits provided for on their declaration pages, is void and unenforceable because (1) the language is unclear and ambiguous; (2) given the effect claimed by the insurers, the provisions would violate their reasonable expectations; and (3) limiting coverage for claims by household members, as opposed to other persons injured by an insured, violates the public policy of this state.

6

The insurers contend that (1) the language of the policy is not unclear because all Montana drivers are charged with the responsibility of knowing the limits of liability coverage they are required to carry by law; (2) any expectations contrary to the plain language of the policy were not reasonable; and (3) the public policy of this state is as set forth in Montana's mandatory liability protection statutes which only require that insurance policies provide coverage to household claimants in the minimum amount provided by statute.

Since we conclude that the provisions in question are unclear and ambiguous, we decline to reach the issues of whether the provisions would violate the insureds' reasonable expectations, or are void because contrary to the public policy of this state.

### DISCUSSION

We have held that "the interpretation of an insurance contract is a question of law." *Truck Ins. Exchange v. Nelson* (1987), 228 Mont. 233, 236, 743 P.2d 572, 574.

Ambiguities in an insurance policy are construed against the insurer and exclusions or words of limitation in a policy must be strictly construed against the insurer. *Bauer Ranch, Inc. v. Mountain West Farm Bureau* (1985), 215 Mont. 153, 156, 695 P.2d 1307, 1309.

An insurance policy clause is ambiguous when different persons looking at the clause in light of its purpose cannot agree upon its meaning. *Bauer Ranch,* 695 P.2d at 1309 (citing *Walker v. Firemans Fund Ins. Co.* (D. Mont. 1967), 268 F. Supp. 899).

The insureds contend that the amendments to their policies which attempted to limit the amount of recovery by household members were unclear and ambiguous because no purchaser or consumer of insurance could determine from the four corners of the policy the extent of coverage being provided. They contend that in contrast to the specific dollar amounts of liability coverage provided for on the declaration pages of their policies, the average consumer would not know what "financial responsibility limits" or "limits of liability required by law" refer to. The Coles further argue that there is a structural ambiguity in their policy based on inconsistent coverage provisions on the declarations page, the exclusions page, and the 1991 endorsement to their policy. They note that the general provisions in their policy provide coverage for injury to "any person"; that the household exclusion purports to apply except where invalid; and that the endorsement limits claims by household members to the amount provided by law. They contend that to determine the amount provided by law would require a trip to a lawyer or a law library, but that the policy does not even provide any reference to a statute from which the "amount provided for by law" could be ascertained.

The insurers respond that Montana's financial responsibility laws require that licensed drivers be familiar with the minimum amount of liability coverage required by law; the policy language in question is not subject to more than one interpretation; and

that in *Sagen v. Prudential Ins.* (1993), 259 Mont. 506, 857 P.2d 719, this Court interpreted an insurance policy to include a statutory requirement.

We initially note that *Sagen* is not on point factually and does not raise a comparable legal issue.

We have never previously addressed the specific issue presented by certification from the United States District Court-- nor have most other jurisdictions. However, in both *Shook v. State Farm Mutual Ins. Co.* (D. Mont. 1994), 872 F. Supp. 768, and *Worldwide Underwriters Ins. Co. v. Brady* (3d Cir. 1992), 973 F.2d 192, nearly identical exclusions in other policies have been found void because those courts concluded that they were either unclear or ambiguous.

In *Shook*, the insured couple was involved in a motor vehicle collision. The husband was driving and his wife was a passenger. They were insured at the time by an automobile liability policy issued by State Farm with bodily injury liability limits of $100,000 per individual. However, that policy, like the ones at issue, had a "household exclusion" which limited State Farm's liability for claims by a family member to "the limits of liability required by law." The wife filed a claim against her husband, claiming he was responsible for the accident. However, State Farm took the position, as the insurers do in this case, that the limit of their responsibility was $25,000 pursuant to the exclusion in the policy.

9

The Shooks filed a declaratory judgment action to resolve the issue, and State Farm moved to dismiss. The district court denied State Farm's motion and concluded that based on the ambiguity of the exclusionary language, the effect of the policy did not fulfill the insureds' reasonable expectation. First, however, the district court repeated the following relevant consideration in determining whether an ambiguity in the policy existed:

> [T]he determination of whether an ambiguity exists in an insurance policy requires an examination of the language utilized from the viewpoint of a consumer of average intelligence, not trained in the law or in the insurance business. *See, e.g., Whispering Creek Condominium Owner Assoc. v. Alaska National Co.*, 774 P.2d 176 (Ala. 1989); *Sparks v. Republic National Life Ins. Co.*, 132 Ariz. 529, 657 P.2d 1127 (1982), *cert. denied*, 459 U.S. 1070, 103 S.Ct. 480, 74 L.Ed.2d 632 (1982). Second, "exclusions and words of limitation in a policy must be strictly construed against the insurer regardless of whether or not they are ambiguous." *Aetna Ins. Co. v. Cameron*, 194 Mont. 219, 633 P.2d 1212, 124 (1981); *see also, Farmers Union Mutual Ins. Co. v. Oakland*, 251 Mont. 352, 825 P.2d 554 (1992).

*Shook*, 872 F. Supp at 773-74.

Based on these rules of construction, and taking into consideration the policy's provisions regarding general liability coverage, the court arrived at the following conclusion:

> Read from the perspective of the Shooks, the language employed in the liability provisions of the subject policy establishes that the coverage was purchased for the purpose of providing a source of indemnification for damages that either of the Shooks would become legally liable to pay because of bodily injury to others and property damage "caused by accident resulting from the ownership . . ." of their car. Based upon this language, standing alone, it would be objectively reasonable for the Shooks to have expected each of them would be indemnified, to the stated limits, for any liability that would accrue to, or be imposed

10

> upon them for damages emanating from bodily injury to *any*
> person that was caused by either of the Shooks' operation
> of the insured vehicle.
>
> . . . .
>
> While the court is not persuaded by the argument of
> structural ambiguity presented by Shook, it does agree
> that the positioning of the exclusion, in relation to the
> general coverage provision, lends itself to the creation
> of the ambiguity in the exclusion.

*Shook*, 872 F. Supp. at 775 (footnote omitted). Based on this observation, State Farm's motion to dismiss was denied. The *Shook* decision appears to reverse the same district court's prior conclusion in the unreported case of *Yardley v. State Farm Mutual Automobile Ins. Co.* (D. Mont. Aug. 29, 1988), CV-87-194-GF.

In *Worldwide*, 973 F.2d at 192, the Third Circuit Court of Appeals concluded that nearly identical language was "so unclear that an insured could not understand the liability limitations imposed upon its family members."

In *Worldwide*, Robert Brady, the insured, was sued by the cousin with whom he lived for damages arising from Brady's negligent operation of a motor vehicle in which his cousin was a passenger. At the time of his motor vehicle collision, Brady's vehicle was insured by Worldwide Underwriters Insurance Company. It provided for bodily injury liability limits of $100,000 per person in language similar to the liability provisions of these policies, but also included the following amendatory endorsement:

> We do not provide Liability Coverage for any person for
> bodily injury to you or any family member to the extent

11

that the limits of liability for this coverage exceed the limits of liability required by the Pennsylvania Motor Vehicle Financial Responsibility Law of 1984.

*Worldwide*, 973 F.2d at 193.

On the basis of the quoted exclusionary language, Worldwide advised Brady that coverage for his cousin's claim was limited to $15,000, which was the minimum amount of coverage required by Pennsylvania's Motor Vehicle Financial Responsibility Law. Worldwide then brought an action in Federal District Court in Pennsylvania for a declaratory judgment confirming its interpretation of the policy. The Court of Appeals first noted that, under Pennsylvania law, an insurance policy provision had to be clear in order to be enforced. It also pointed out that while the terms "clear" and "unambiguous" are sometimes used interchangeably in the decisions of various courts, there is "a distinction, however subtle," between the two terms. *Worldwide*, 973 F.2d at 195. It pointed out that:

> While ambiguity has been described as "the condition of admitting to two or more meanings," *see Mellon Bank v. Aetna*, 619 F.2d at 1011, the question of clarity is slightly more simplistic, i.e., is the wording "easily understood?"

*Worldwide*, 973 F.2d at 195.

Based on that distinction, the Court of Appeals did not reach the issue of ambiguity. However, it concluded that the policy exclusion was unenforceable based on its lack of clarity for the following reasons:

12

The imprecise wording of the clause renders it undiscernible by the insured. Considering, as we should, the document as a whole, *see Smith v. Cassida*, 403 Pa., 404, 169 A.2d 539, 541 (1961) ("policy . . . must be read in entirety and the intent gathered from a consideration of the entire instrument"), we find that the exclusion does not inform the insured that full coverage for his family members was compromised. In order to be informed of the limitation imposed by this clause as the insurer intended, Brady would be compelled to travel beyond the four corners of the policy, presumably to the nearest law library or lawyer, to realize that the language of the policy, citing to the Motor Vehicle Financial Responsibility Law, imposed a $15,000 recovery of benefits cap on injuries received by family members. Pennsylvania does not place such an affirmative burden on purchasers of insurance--rather the insurer has the duty to write its policies in a clear and intelligible fashion. Because the Worldwide policy failed to explicitly inform Brady of the elements of its limited coverage, Brady is entitled to full policy benefits for the injuries incurred by his family member, Morros.

*Worldwide*, 973 F.2d at 196.

While the *Shook* decision is based upon the insureds' reasonable expectations, and the *Worldwide* decision is based on the policy's lack of clarity, we find the reasoning in *Worldwide* persuasive and applicable to our consideration of whether the provision at issue in the cases before us is ambiguous.

As pointed out in *Shook*, the question of ambiguity is examined from the viewpoint of a consumer with average intelligence but not trained in the law or insurance business. Based upon the general liability provisions in each of the insurers' policies, and based on the figures provided on the declaration pages for each policy, we conclude that the policies in question are subject to more than one interpretation regarding the extent of coverage for damage to

13

a household member, and that a person of average intelligence could not determine from the four corners of the insurance policy the dollar amount of coverage provided. The endorsements and declaration page limit coverage to family members to either "limits of liability required by law," or to "the financial responsibility limits of the policy state." There is no dollar amount set forth. There is no identification of the "policy state," nor is there any citation to the state law on which the liability limit is based. No lay person could determine from the face of the policy whether claims by family members were the same or less than the limits of coverage provided under the general liability provision of each policy.

Furthermore, the language "limits of liability required by law" could be interpreted to mean the limit of liability imposed by a court of law pursuant to the law of damages.

For these reasons, in answer to the question certified to us, we conclude that the amendatory endorsements at issue are ambiguous, and therefore, unenforceable. Based on this conclusion, the Leibrands and the Coles are entitled to recover the full amount of general liability coverage provided for in their policies if damages in at least those amounts can be proven.

Citing our decision in *Horace Mann Ins. v. Hampton* (1989), 235 Mont. 354, 767 P.2d 343, and numerous decisions from other jurisdictions, the insurers argue that if the endorsements at issue are invalid, the result is the same because both policies otherwise contain a

14

total exclusion of coverage for claims by household members, and those provisions are only invalid to the extent that coverage is required under Montana's mandatory liability protection laws. Those laws only require coverage in the amount of $25,000 per individual. Section 61-6-301, MCA. However, *Horace Mann* is distinguishable, as are the cases relied on by the insurers from other jurisdictions. In *Horace Mann*, 767 P.2d at 345, we simply held that:

> When an insurer fails to provide a policy in compliance with the requirements of a statute mandating insurance protection, the courts are forced to reform the policy so that it is in compliance. 12A *Couch on Insurance 2d* (Rev. ed.) § 45:692.

The decisions relied on from other jurisdictions are based on similar principles. However, in this case we have not rejected the endorsement language based on statutory requirements. We have held that the language is unenforceable because it is ambiguous. In this Court's decision, which held that blanket household exclusions are unenforceable based on statutory law (*Transamerica v. Royle* (1983), 202 Mont. 173, 656 P.2d 820), we did not hold that coverage is then limited to the statutory amount required. Furthermore, we find that line of cases more persuasive which hold that when insurance policy exclusions are unenforceable, the policy should be enforced according to the remainder of its terms. For example, in *Meyer v. State Farm Mutual Auto Ins. Co.* (Colo. 1984), 689 P.2d 585, the Colorado Supreme Court, after invalidating household exclusions in insurance policies based on the terms of its financial responsibility act,

15

rejected a similar insurer's argument regarding the extent of coverage available. That court held that:

> [W]e are more persuaded by the insured's argument. The Act specifically provides that insurance policies may provide greater coverage than the minimum specified in the Act. § 10-4-710, 4 C.R.S. (1973). This provision is consistent with the legislative intent to avoid inadequate compensation to victims of automobile accidents. § 10-4-702, 4 C.R.S. (1973). Here, the insured purchased more coverage than required by the Act. We hold that where the household exclusion clause has been held invalid because it violates the Act, the limits of the carrier's liability are those provided by the policy and not the lesser limits required by the statutory standard. *Kish v. Motor Club of America Insurance Co.*, 108 N.J.Super. 406, 261 A.2d 662 (1970). . . . In our view, the second approach is more consistent with the legislative intent and policy which is to maximize rather than minimize insurance coverage. Moreover, our choice of rules is supported by the well-established principle of contract law that where a provision in a contract is void because it is contrary to public policy, the remaining portions of the agreement are enforceable to the extent the illegal provision can be separated from the valid promises. *See, e.g., Reilly v. Korholz*, 137 Colo. 20, 320 P.2d 756 (1958) . . . *Restatement (Second) of Contracts* §§ 178, 184 (1979). *See generally* J. Calamari & J. Perillo, *The Law of Contracts* § 22-4(d) (2d ed. 1977).

*Meyer*, 689 P.2d at 592-93.

In accord with *Meyer* are *State Farm Mutual Auto Ins. Co. v. Waggeman* (Del. 1988), 541 A.2d 557, *Kish v. Motor Club of America Ins. Co.* (N.J. Super. 1970), 261 A.2d 662, and *Hughes v. State Farm Mutual Auto Ins. Co.* (N.D. 1975), 236 N.W.2d 870. Courts have arrived at the contrary conclusion in *Arceneaux v. State Farm Mutual Auto Ins. Co.* (Ariz. 1976), 550 P.2d 87, *DeWitt v. Young* (Kan. 1981), 625 P.2d 478, *State Farm Mutual Automobile Ins. Co. v. Nationwide Mutual Ins. Co.* (Md. 1986), 516 A.2d 586, and *State Farm Mutual Automobile Ins. Co. v. Mastbaum* (Utah 1987), 748 P.2d 1042.

While we decide this case on the basis of the ambiguity in the policy language, we are not unmindful of the insureds' arguments that these contracts are contracts of adhesion; that full coverage for damages suffered by family members is not available on the open insurance market, and that to arbitrarily preclude full coverage for family members, as opposed to all other persons, is unconscionable and void as a matter of public policy, and therefore, unenforceable, regardless of the future clarity of such an exclusion. We acknowledge that conscionability may be a factor in any future consideration of that issue, however, conclude that based on the record before us, we have an insufficient factual basis for addressing that issue. A similar issue was raised in the *Worldwide* case. That court declined to address the issue for similar reasons. The Third Circuit Court of Appeals stated that:

> Unconscionability in a contract is a concept introduced under the Uniform Commercial Code and it has been applied to insurance contracts. *See Bishop v. Washington*, 331 Pa.Super. 387, 480 A.2d 1088 (1984); *Ferguson v. Lakeland Mutual Insurance Co.*, 408 Pa.Super. 332, 596 A.2d 883 (1991). Unconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions. *Koval v. Liberty Mutual Insurance Co.*, 366 Pa.Super. 415, 531 A.2d 487, 491 (1987). Here, although the record suggests that this contract was one of adhesion, *i.e.*, Brady's ability to procure a policy without a family member exclusion is doubtful, we are not confident that the undisputed facts, sparsely assembled here, would require such a determination. We will, therefore, not rest our decision today based upon the unconscionable result exception to the *Standard Venetian* rule.

*Worldwide*, 973 F.2d at 196.

17

For the reasons set forth in this opinion, we answer the certified question as follows: No. The amendatory endorsements in both policies at issue in these cases are not valid and enforceable. For that reason, the insureds are provided with coverage under each policy in the full amount provided for under the general liability provision of their respective policies.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

18