NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff/Respondent,

v.

Brant MAUNE, Defendant/Appellant,

and

Ryan V. Maune, Defendant.

No. ED 90690.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 6, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 4, 2009.

Application for Transfer Denied March 31, 2009.

David C. Knieriem, Clayton, MO, for appellant.

Gerard T. Noce, Michael L. Young, St. Louis, MO, for respondent.

LAWRENCE E. MOONEY, Presiding Judge.

Due to a motor-vehicle accident and consequent litigation between family members Ryan and Brant Maune, we must determine the amount of coverage afforded under a motor-vehicle liability policy, which contains a household-exclusion provision. The insurer, National Union Fire Insurance Company of Pittsburgh, PA, argues that the household-exclusion provision limits its obligation to $25,000 for the claim. The insured, Brant Maune, contends that the household-exclusion provision is ambiguous and unenforceable, thus affording him the full $100,000 in liability coverage. In the alternative, Brant asserts that, by virtue of stacking, the policy affords him $75,000 in coverage. The trial court entered summary judgment in favor of National Union, finding coverage under the policy was limited to $25,000. The Maunes appeal. Because the Maunes' contention of ambiguity does not fall within the well-established meaning of ambiguity, and because the policy contains anti-stacking language, we affirm the trial court's judgment.

### Factual and Procedural History

The summary-judgment facts are stipulated. Ryan Maune alleges that the motorcycle he was riding was hit head-on by a car driven by Brant Maune, resulting in a broken arm, surgery to remove his spleen, and a below-the-knee amputation of his left leg. Ryan filed a personal-injury lawsuit against Brant, seeking over $25,000 in damages.

Brant was insured under an automobile insurance policy, which National Union had issued to Brant's father, Stanley Maune. The policy provides, generally, that National Union will pay damages for bodily injury for which any insured becomes legally responsible because of an auto accident.[1] In this case, this would be

---

1. Specifically, the Missouri Endorsement to the policy contains the following insuring

Brant Maune. As noted on the declarations page, the policy's limit of liability for bodily injury is $100,000/ $300,000 per person/accident. The Missouri Endorsement to the policy, however, contains the following household exclusion, which is at the heart of the dispute:

> We do not provide Liability Coverage for any 'insured' for 'bodily injury' to you or any 'family member' to the extent that the limits of liability for this coverage exceed the limits of liability required by the Missouri Financial Responsibility Law.

The policy defines the terms "you" and "your" as the named insured shown in the declarations; Stanley Maune is listed as a named insured. The policy defines "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household," which in this case is Ryan Maune.[2] The policy declaration page lists two automobiles that are covered, one of which Brant was operating at the time of the incident.[3]

In light of the personal-injury action against Brant Maune, National Union filed a declaratory-judgment action to determine the rights, obligations, and liabilities that exist between the parties in connection with the policy. Specifically, National Union sought a declaration that any claim

for damages for bodily injury that Ryan Maune may have against Brant Maune in excess of $25,000 was excluded by the policy. National Union argued its obligation was limited by operation of the household-exclusion provision in the policy, in conjunction with the Missouri Financial Responsibility Law, Section 303.010, *et seq.*, which only requires that a policy provide coverage in the amount of $25,000. Based on a joint stipulation of facts, National Union moved for summary judgment, requesting that the court enter judgment in National Union's favor declaring that National Union owed Brant Maune only $25,000 in liability coverage under the policy for the pending personal-injury lawsuit filed by Ryan Maune against Brant Maune. Brant Maune filed a "motion for judgment," advancing two alternative arguments. First, he argued that the household-exclusion provision is ambiguous, and therefore unenforceable. Accordingly, he contended that the policy provided the full $100,000 in liability coverage. In the alternative, Brant argued that the statutory $25,000 minimum limit of liability coverage may be stacked for the three insured vehicles, affording him $75,000 in coverage.

The trial court entered summary judgment in favor of National Union, finding

agreement:

> We will pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defendant any suit or settle any claim for 'bodily injury' or 'property damage' not covered under this policy.

2. The parties have stipulated that Ryan Maune qualifies as a "family member" within the meaning of the policy because he is related to Stanley Maune by blood marriage or adoption and for all relevant times was a resident of Stanley Maune's household. The summary-judgment record is less clear on the relationship between Ryan Maune and Brant Maune. National Union, however, in its brief to this Court, states that Brant and Ryan are brothers.

3. We note that while the parties stipulated that the policy designated three covered automobiles, the policy in the record on appeal designates only two covered automobiles.

that National Union owed Brant Maune only $25,000 in liability coverage under the policy for the personal-injury lawsuit filed by Ryan Maune against Brant Maune. The Maunes responded with this appeal. In asserting that the trial court erred in granting summary judgment in favor of National Union, the Maunes advance the same two alternative arguments presented to the trial court—that the exclusion is ambiguous and therefore unenforceable, thus providing them $100,000 in coverage; and alternatively, that by virtue of stacking, the policy provides them $75,000 in coverage. We address each contention in turn.

## Standard of Review

■ Our review of the trial court's grant of summary judgment is essentially *de novo*. *ITT Commercial Finance v. Mid–America Marine Supply*, 854 S.W.2d 371, 376 (Mo. banc 1993). "Summary judgment is frequently used in the context of insurance coverage questions." *Lang v. Nationwide Mut. Fire Ins. Co.*, 970 S.W.2d 828, 830 (Mo.App. E.D.1998). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *ITT Commercial Finance*, 854 S.W.2d at 376; *American Standard Ins. Co. v. Hargrave*, 34 S.W.3d 88, 89 (Mo. banc 2000); *see also*, Rule 74.04(c). "The interpretation of an insurance policy is a question of law that this Court also determines *de novo*." *Seeck v. Geico General Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007).

## Discussion

We first address the Maunes' contention that the household-exclusion provision is

ambiguous, and therefore unenforceable. The Maunes raise three particular complaints regarding the provision. First, they complain that the provision refers to the "Financial Responsibility Law," when there is no such named law in Missouri.[4] Second, the Maunes complain that one cannot determine the "limits of liability" the provision refers to because that phrase does not occur in the particular subsection of the statute, Section 303.190, where the limits are identified. And third, the Maunes note that while "limit of liability" in the policy refers to a maximum limit, the statute uses "limit" in the context of a minimum limit. The Maunes characterize the household-exclusion provision as a "muddled mess" and maintain that this Court should find the provision ambiguous due to its "incomprehensibility."

■ Several rules guide our interpretation of insurance policies. The function of this Court is "to interpret and enforce an insurance policy as written; not to rewrite the contract." *Lupo v. Shelter Mut. Ins. Co.*, 70 S.W.3d 16, 21 (Mo.App. E.D.2002). The key in interpreting an insurance policy is whether the policy's language is ambiguous or unambiguous. *Todd v. Missouri United School Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007) (citations omitted). The issue of whether an insurance policy is ambiguous is a question of law for the court's determination. *Id.* In determining whether the language used in the policy is ambiguous, we consider the language in light of the meaning that would normally be understood by the layperson who bought and paid for the policy. *Bowan ex rel. Bowan v. General Sec. Indemn. Co. of Arizona*, 174 S.W.3d 1, 8 (Mo.App. E.D.2005). Further, we will consider whether the lan-

---

4. Missouri has a "Motor Vehicle Financial Responsibility Law," Section 303.010 *et seq.* RSMo (2000).

guage is ambiguous by reading the policy as a whole. *Id.* "Where insurance policies are unambiguous, the rules of construction are inapplicable, and absent a public policy to the contrary, the policy will be enforced as written." *Krombach v. Mayflower Ins. Co., Ltd.,* 827 S.W.2d 208, 210 (Mo. banc 1992). On the other hand, if an insurance policy's language is ambiguous, the rules of construction will apply and the ambiguous provisions will be construed against the insurer. *Id.*; *Seeck,* 212 S.W.3d at 132. In such an instance, we will construe the ambiguous language and apply a meaning that would ordinarily be understood by the insured. *Schenewerk v. Mid–Century Ins. Co.,* 263 S.W.3d 660, 665 (Mo.App. E.D. 2008); *Dibben v. Shelter Ins. Co.,* 261 S.W.3d 553, 556 (Mo.App. W.D.2008). We may not, however, under the guise of interpretation, "unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity when none exists." *Todd,* 223 S.W.3d at 163. As repeatedly stated by the courts of this state, an ambiguity arises in an insurance policy when, "due to duplicity, indistinctness, or uncertainty in the meaning of the words used, the policy is reasonably open to different constructions." *Farm Bureau Town & Country Ins. Co. of Missouri v. Barker,* 150 S.W.3d 103, 106 (Mo.App. W.D.2004)(citing *Krombach,* 827 S.W.2d at 210); *see also, e.g., Allstate Ins. Co. v. Ibrahim,* 243 S.W.3d 452, 456 (Mo.App. E.D.2007); *Little v. American States Ins. Co.,* 179 S.W.3d 433, 441 (Mo.App. S.D.2005).

The Maunes cite the decision of the Oregon Supreme Court in *North Pacific Insurance Co. v. Hamilton,* 332 Or. 20, 22 P.3d 739 (2001), in support of their position that the household-exclusion provision is ambiguous. The family-member/household-exclusion provision at issue there is worded similarly to the provision here, and stated that no liability coverage was pro-vided "[f]or bodily injury or property damage to you or any family member to the extent that the limits of liability for this coverage exceed the limits of liability required by the Oregon financial responsibility law." The Oregon Supreme Court held that the provision was ambiguous and therefore construed the provision against the insurance company, to afford the policyholder the full amount of liability coverage as provided on the declarations page of the policy. *Hamilton,* 22 P.3d at 744.

In so holding, the Oregon court first noted that it had never been confronted with a contention that a term or phrase under review was simply incomprehensible. As the court noted, under Oregon law, " 'a term is ambiguous in a sense that justified application of the rule of construction against the insurer *only* if two or more plausible interpretations of that term withstand scrutiny....' " *Hamilton,* 22 P.3d at 741–2 (quoting *Hoffman Construction Co. v. Fred S. James & Co.,* 313 Or. 464, 836 P.2d 703, 706 (1992))(emphasis in original). Nevertheless, the Oregon court concluded that a term also could be considered "ambiguous" if "its meaning is not comprehensible for some reason, such as indefiniteness, erroneous usage, or form of expression." *Hamilton,* 22 P.3d at 742. Continuing, the court faulted the provision in three particular ways. First, the court noted that the provision did not describe any actual limit for injured insureds or their family members. Second, the court noted that the phrase "limits of liability" was nowhere to be found in the Oregon financial responsibility law. And lastly, the court noted that virtually every time the phrase "limits of liability" appears in the policy, it refers to a maximum amount that an insurer would pay under certain circumstances. Given the way the phrase was used elsewhere in the policy, the court reasoned that an ordinary purchaser of

insurance could be expected to understand the phrase "limits of liability" in the exclusion to refer to a maximum limit. The court noted, however, that the Oregon financial responsibility law set no maximum limits for liability. The court further noted that the insurance company had, in fact, contended that the second time the phrase was used in the exclusion provision, it referred to the minimum coverage required under the financial responsibility law. *Id.* at 742–3. Based on these criticisms, the court found that an ordinary purchaser of insurance would not be able to determine what the provision means, and would not be able to determine that the exclusion was meant to reduce the limits of liability for certain claimants below the amount that appeared on the declarations page. *Hamilton,* 22 P.3d at 744.

Of course, this out-of-state decision is merely persuasive, rather than binding, authority. We are unpersuaded to follow in the Oregon court's footsteps. The *Hamilton* case differs significantly from our circumstances, in a number of ways. As we shall discuss further, the Oregon court rested its decision on a different meaning of "ambiguous" than exists under Missouri precedent. Next, the problems noted with Oregon's statutory scheme are not present in Missouri's laws. Unlike Oregon law, the phrase "limits of liability" appears in Missouri's statutory scheme. On at least two occasions, the Missouri statutes refer to the minimum amounts of liability coverage required by statute as "limits of liability." *See* Sections 303.190.3

and .6(3). And lastly, the Oregon court noted that the insurance policy in that case usually referred to "limits of liability" as maximum limits of liability, not minimum limits of liability contemplated by the state's financial responsibility law. Missouri's statutes, however, use the phrase "limits of liability" to refer to both minimum and maximum amounts of coverage. *See* Sections 303.190.2, .3, .4, and .6(3). Because of these differences, the analysis and holding of the *Hamilton* court are of little assistance.[5]

■ The Maunes argue that because a layperson cannot comprehend the exclusion's effect absent the aid of an attorney, the exclusion is ambiguous. But they cite no alternative meaning a layperson would attach to the exclusion, which is necessary to establish an ambiguity under Missouri law. The Maunes' essential complaint is that the provision is unclear to a layperson. We agree that a layperson would be hard put to understand the scope of the exclusion absent the aid of any attorney. And at least one court has noted that a distinction exists between an unambiguous provision and an unclear provision and has held that the terms of insurance contracts must be both clear and unambiguous. *See, Worldwide Underwriters Insurance Company v. Brady,* 973 F.2d 192, 195 (3d Cir.1992). However, the Maunes have not cited, and we have not found, Missouri law expanding the meaning of "ambiguity" to include mere lack of clarity to a layperson.

5. The Maunes also cite the Montana Supreme Court decision in *Leibrand v. National Farmers Union Property and Casualty. Co.,* 272 Mont. 1, 898 P.2d 1220 (1995), and the federal-court decision in *Worldwide Underwriters Insurance Company v. Brady,* 973 F.2d 192 (3d Cir.1992)(applying Pennsylvania law), as supporting their position that the household-exclusion provision in this case is ambiguous. Although these courts held household-exclu-

sion provisions unenforceable, we find the decisions unpersuasive. The provisions in the *Leibrand* case differ from the provisions here because the provisions in *Leibrand* did not identify the policy state, and the exclusions vaguely referred to limits of liability "required by law." The *Brady* court based its decision on the policy's lack of clarity; the court did not reach the issue of ambiguity.

Both a lack of clarity and an ambiguity compromise a policyholder's ability to make an informed choice among insurance policies. However, a lack of clarity presents a danger distinct from that of an ambiguity. A layperson encountering an ambiguous provision might reasonably conclude that he comprehended the scope of coverage due to his adoption of one of two alternative meanings of a provision, without even considering that another alternative meaning was possible. A layperson confronting an unclear provision is not so misled. While the meaning of the provision may be indecipherable, at least the policyholder does not falsely place his faith in the insurance provision.

The better public policy may be to require that all insurance provisions be clearly comprehensible to the layperson, but that is a matter for the legislature. Here, the plaintiff's argument rests on a claim of ambiguity that is not recognized by Missouri law. We deny this point.

■■■■ We next address the Maunes' stacking argument. The Maunes contend that the statutory $25,000 minimum limit of liability coverage may be stacked for each vehicle insured, and that because the policy covers three automobiles, this affords them $75,000 in coverage. In advancing this position, the Maunes argue that Missouri Supreme Court, in its *Hargrave* decision, effectively held that liability policies can be stacked. *American Standard Ins. Co. v. Hargrave*, 34 S.W.3d 88 (Mo. banc 2000). The Maunes note that Missouri's Motor Vehicle Financial Responsibility Law (MVFRL) requires each policy to provide the statutory minimum limits. They thus contend that, pursuant to the teachings of *Hargrave*, the minimum limits of the MVFRL may be stacked for each vehicle insured. We need not reach this contention, however, for the policy here contains anti-stacking language. The Maunes acknowledge this, but nevertheless argue that because the household-exclusion provision does not contain its own anti-stacking language, the provision is ambiguous. They thus posit that one way to interpret the provision is that the "limit of liability" referred to in the provision is the $25,000 required by statute, multiplied by the three cars, for a total of $75,000 in coverage. We are not so persuaded. In interpreting an insurance policy, we are to read the policy as a whole. *Todd*, 223 S.W.3d at 163. The policy contains explicit anti-stacking language. We deny this point.

We affirm the trial court's judgment.

BOOK T. SHAW and KURT S. ODENWALD, JJ., concur.