No. 96-173

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


MARY SWANK and FARMERS
INSURANCE EXCHANGE, a reciprocal
or inter-insurance exchange,

Plaintiffs and Appellants,

v.

CHRYSLER INSURANCE CORPORATION,

Defendant and Respondent.



APPEAL FROM:      District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Robert P. Goff, Judge presiding.


COUNSEL OF RECORD:

For Appellants:

William J. Gregoire (argued), Dennis P. Clarke; Smith, Walsh,.
Clarke & Gregoire, Great Falls, Montana

For Respondent:

Robert F. James (argued); James, Gray & McCafferty, Great
Falls, Montana



Submitted: January 30, 1997

Decided:   May 6, l997
Filed:


_____
Clerk
Justice Karla M. Gray delivered the Opinion of the Court.

Mary Swank and her insurer, Farmers Insurance Exchange, appeal from the judgment entered by the Eighth Judicial District Court, Cascade County, on its order granting Chrysler Insurance Corporation's motion for summary judgment. We reverse and remand with instructions.

FACTS

The facts are not in dispute. On June 22, 1994, Mary Swank (Swank) was test-

driving a vehicle owned by Haggarty Motors (Haggarty), an automobile dealership in Great Falls. During the test-drive, she was involved in an accident with Bonnie May (May). May subsequently filed suit against Swank.

Chrysler Insurance Corporation (Chrysler) was Haggarty's automobile liability insurer on the date of the accident. Swank made a demand on Chrysler for coverage and a defense against May's suit. Chrysler refused the demand. Thereafter, Farmers Insurance Exchange (Farmers), Swank's personal automobile insurer, undertook the defense of May's suit on Swank's behalf.

Swank and Farmers (collectively, hereafter, Swank) filed a declaratory judgment action in the District Court alleging that Swank was an insured under the Chrysler policy and that Chrysler's refusal to provide coverage violated 61-6-301, MCA, Montana's mandatory motor vehicle liability insurance statute. Swank also alleged that, under the terms of the Chrysler and Farmers policies, the Chrysler policy should provide primary coverage, and the Farmers policy secondary coverage, for the accident. In its answer, Chrysler denied that Swank was entitled to coverage under its policy.

The parties filed cross-motions for summary judgment and the District Court granted Chrysler's motion. It concluded that Farmers must provide primary coverage to Swank and that Chrysler would be liable only to the extent coverage was necessary to reach the statutorily-required minimum coverage. Swank appeals.

## STANDARD OF REVIEW

Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. We review a district court's grant of summary judgment de novo and apply the same Rule 56(c), M.R.Civ.P., criteria used by that court. Jarrett v. Valley Park, Inc. (1996), 277 Mont. 333, 338, 922 P.2d 485, 487 (citing Matter of Estate of Lien (1995), 270 Mont. 295, 298, 892 P.2d 530, 532). Ordinarily, such a review requires that we first determine whether the moving party met its burden of establishing the absence of genuine issues of material fact and entitlement to judgment as a matter of law. Jarrett, 922 P.2d at 487.

In this case, however, the facts are undisputed. Through their cross-motions for summary judgment, each party asserted entitlement to judgment as a matter of law. Therefore, our review is confined to the District Court's conclusions of law. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. Carbon County v. Union Reserve Coal Co., Inc. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

## DISCUSSION

Did the District Court err in granting Chrysler's motion for summary judgment?

In granting Chrysler's motion, the District Court determined that Farmers must provide coverage to Swank because the Chrysler policy, by its terms, provides no coverage where there is other insurance meeting the statutory minimums. In making that determination, the court implicitly concluded that the Chrysler policy met the requirements of 61-6-301, MCA.

Haggarty is the named insured under the Chrysler policy, which contains the standard Montana endorsement providing that it conforms to the minimum requirements of Montana law and that any nonconforming provision is amended to conform. The policy's standard insuring clause for covered autos provides that Chrysler will pay all sums an insured legally must pay as damages.

Under the Chrysler policy, an "insured" is defined expansively to include, in addition to Haggarty, anyone using a covered auto owned by Haggarty with Haggarty's permission. Thereafter, however, customers using such vehicles with permission (permissive use customers) are expressly excluded from the definition of "insureds;" they become "insureds" only if they are uninsured or underinsured and, in that event, the coverage provided is limited to the amounts required by financial responsibility laws. Thus, Chrysler's definition of "insured" generally excludes Haggarty's permissive use customers from coverage and extends coverage only when, and to the extent, they are uninsured or underinsured. We refer to these provisions below as the exclusion-limitation language relating to permissive use customers.

On appeal, Swank asserts that 61-6-301, MCA, and Bill Atkin Volkswagen, Inc.

v. McClafferty (1984), 213 Mont. 99, 689 P.2d 1237, require Chrysler to provide her coverage for the accident without regard to the existence of her own liability policy. Chrysler argues that its policy meets the requirements of Montana law because it provides coverage to customers using vehicles with permission if they do not have insurance of their own and that Bill Atkin Volkswagen is distinguishable.

Section 61-6-301(1), MCA, provides that:

[A]n owner of a motor vehicle that is registered and operated in Montana by the owner or with the owner's permission shall continuously provide insurance against loss resulting from liability imposed by law for bodily injury or death or damage to property suffered by any person caused by maintenance or     use of a motor vehicle . . . in an amount not less than that required by 61-6-103 . . . .

We addressed   61-6-301(1), MCA, in Bill Atkin Volkswagen, which involved whether a permissive user of an automobile dealer's vehicle was an insured as defined in the dealer's policy.  Given Swank's position that that case is dispositive here, we first discuss its applicability.

William McClafferty (McClafferty) had left his vehicle for repair at Bill Atkin Volkswagen (Atkin VW), a Butte automobile dealership.  While driving a loaner vehicle owned by the dealership, McClafferty was involved in an accident which admittedly was his fault.  Bill Atkin Volkswagen, 689 P.2d at 1238.  McClafferty was sued by the owner of the other vehicle and tendered defense of the suit to Universal Underwriters Insurance Company (Universal), Atkin VW's insurer.  Bill Atkin Volkswagen, 689 P.2d at 1238.  Universal denied coverage and McClafferty's own insurer defended the case.  The dealership also commenced an action against McClafferty and coverage issues arose in third-party pleadings.  Bill Atkin Volkswagen, 689 P.2d at 1238.

In pertinent part, the liability policy issued by Universal extended coverage to any person "required by law" to be an insured while using a covered automobile with the dealer's permission.  Bill Atkin Volkswagen, 689 P.2d at 1239.  Universal argued that 61-6-301, MCA, did not require it to insure all permissive users and that the statute was satisfied by McClafferty and Atkin VW each maintaining coverage.  Bill Atkin Volkswagen, 689 P.2d at 1239.  The district court concluded that   61-6-301, MCA, requires an automobile dealer to provide liability coverage for permissive users and, as a result, that McClafferty was an insured under the Universal policy.  Bill Atkin Volkswagen, 689 P.2d at 1240.

On appeal by Universal, we determined that   61-6-301, MCA, requires coverage by the owner where a vehicle is operated with the owner's permission, observing that no statutory exception existed for situations in which the operator was covered under a separate liability policy.  Thus, the fact that the operator of the vehicle maintained his own policy did not exempt the owner from the statutory requirement of insuring against liability resulting from permissive use of its vehicles.  Bill Atkin Volkswagen, 689 P.2d at 1239.  Because   61-6-301, MCA, required Atkin VW to maintain a liability insurance policy extending coverage to a person using a loaner vehicle with the dealer's permission, we held that McClafferty was an "insured" under the Universal policy defining insured as any person required by law to be an insured.  Bill Atkin Volkswagen, 689 P.2d at 1240.

Our holding in Bill Atkin Volkswagen does not resolve the question presently before us.  We did nothing more in Bill Atkin Volkswagen than reiterate the statutory language contained in   61-6-301, MCA, determine that no statutory exception existed for a permissive user who had his own liability policy, and apply the statute to the facts before us.  Because   61-6-301, MCA, required coverage, the permissive user was an insured under the Universal policy definition of insured as "any person required by law to be an insured."

Here, the Chrysler policy maintained by Haggarty contains substantially different language.  It first defines "insured" to include all permissive users of Haggarty's vehicles.  This language clearly meets the requirements of   61-6-301, MCA, and Bill Atkin Volkswagen.  The Chrysler policy goes on, however, to exclude permissive use customers such as Swank from the definition of insured; it then extends coverage to her

if, and to the extent, other insurance is not available which meets the mandatory minimum coverage required by Montana law. Thus, the threshold issue is whether this exclusion-limitation language in the Chrysler policy satisfies the requirements of 61-6-301, MCA.

As set forth above, 61-6-301(1), MCA, requires the owner of a vehicle operated with its permission to continuously provide insurance against loss resulting from liability caused by use of the vehicle in an amount not less than that required by 61-6-103, MCA. This plain statutory language requires Haggarty's Chrysler policy to provide coverage to any person operating a covered auto with Haggarty's permission in an amount not less than the statutory minimum.

The Chrysler policy at issue, however, extends coverage to permissive use customers of Haggarty-owned vehicles only if they are uninsured or underinsured and, in that event, coverage is provided only up to the statutorily-mandated minimum. It is clear that the Chrysler policy does not extend coverage to any customer using a Haggarty-owned vehicle with its permission. It initially excludes customers and then extends coverage only to certain of those customers; namely, permissive use customers who do not provide their own liability coverage or who are underinsured. It is equally clear that, as to those underinsured customers to whom coverage is extended, the coverage extended may be less than that required by statute in Montana by virtue of the language limiting coverage to "the amount by which the compulsory or financial responsibility law limits exceed the limit of their other insurance." In this regard, the Chrysler policy sets a "ceiling" level of coverage rather than the "floor"--or minimum--amount of coverage required by the "not less than" language in 61-6-301(1), MCA, and that ceiling level of coverage can be less than the statutory minimum. We conclude that the definition of "insured" contained in the Chrysler policy does not meet the requirements of 61-6-301(1), MCA.

Our prior decisions interpreting insurance policies in the context of mandatory liability coverage establish that policy language which excludes statutorily-mandated coverage is void as contrary to public policy. Allstate Ins. Co. v. Hankinson (1990), 244 Mont. 1, 4, 795 P.2d 480, 482 (citing Horace Mann Ins. v. Hampton (1989), 235 Mont. 354, 767 P.2d 343; Iowa Mutual Ins. Co. v. Davis (1988), 231 Mont. 166, 752 P.2d 166). On that basis, it is clear that the exclusion-limitation language in the Chrysler policy is void as contrary to public policy and unenforceable, because that language excludes or limits coverage mandated by 61-6-301(1), MCA, for permissive operators of vehicles.

The effect of our conclusion that the exclusion-limitation portions of the definition of an insured in the Chrysler policy are void and unenforceable remains to be resolved. Chrysler argues that, in the event we determine there is coverage for Swank under its policy, coverage is limited to the minimum amount of coverage mandated by 61-6-103 and 61-6-301, MCA. Swank contends that the full general liability policy limits contained in the Chrysler policy apply.

We recently rejected the argument Chrysler advances here. In Leibrand v. Nat. Farmers Union (1995), 272 Mont. 1, 10-11, 898 P.2d 1220, 1226, we determined that certain amendatory policy endorsements were unenforceable and then addressed the effect of that determination on the amount of coverage to be extended. Addressing the insurers' argument that the unenforceable provisions were invalid only to the extent coverage was required under Montana's mandatory liability protection laws, we adopted as "more persuasive [that line of cases] which hold that when insurance policy exclusions are unenforceable, the policy should be enforced according to the remainder of its terms." We quoted at length from Meyer v. State Farm Mutual Auto Ins. Co. (Colo. 1984), 689 P.2d 585, where, in the context of policy language invalid by virtue of violating statutory requirements, the Colorado Supreme Court stated that:

> [O]ur choice of rules is supported by the well-established principle of contract law that where a provision in a contract is void because it is contrary to public policy, the remaining portions of the agreement are enforceable to the extent the illegal provision can be separated from the valid promises. [Citations omitted.]

Leibrand, 898 P.2d at 1226 (citing Meyer, 689 P.2d at 593).  On that basis, we concluded that the full amount of general liability coverage in the policies at issue was available to the insureds.  Leibrand, 898 P.2d at 1227.

Applying Leibrand to the present case, we conclude that the void and unenforceable exclusion-limitation language relating to Haggarty's permissive use customers in the Chrysler policy can be easily separated from the remaining portions of the policy.  Deleting those offending provisions leaves an insured defined, in pertinent part, as "[a]nyone else while using with your permission a covered 'auto' . . . ."  This definition of insured fully meets the requirements of  61-6-301, MCA, and Bill Atkin Volkswagen.  We conclude, therefore, that Swank must be extended coverage to the full amount provided for under the general liability amount contained in the Chrysler policy.

Nor, in light of Leibrand, can Chrysler limit its liability exposure by relying on the Montana endorsement in its policy which states that any policy provision not conforming to the minimum requirements of a Montana statute "is amended to conform to such statute."  Leibrand is controlling and requires that Chrysler extend coverage to the policy limits.  Leibrand, 898 P.2d at 1226-27.  We have "conformed" the Chrysler policy accordingly.  At most, application of Leibrand's mandate that the policy be enforced "according to the remainder of its terms" would result in a conflict between the provision limiting Chrysler's responsibility to the statutory minimum and the general liability limits provision.  In such a circumstance, the legislative intent to maximize rather than minimize coverage (see Leibrand, 898 P.2d at 1226 (citing Meyer, 689 P.2d at 593)) would necessitate extending coverage in the larger amount.  To do otherwise would permit Chrysler to limit its liability to the statutory minimum after having failed in its effort, through artful drafting, to avoid the statutory requirements altogether or limit those requirements in a manner not authorized by statute.

The final question before us is how coverage for Swank should  be coordinated between the Farmers and Chrysler policies.  Recalling that the vehicle Swank was driving in this case was owned by Haggarty, not Swank, we turn first to the language contained in each policy.  Swank's Farmers policy states that the insurance it provides for any vehicle not owned by Swank "shall be excess over any other collectible insurance."  The Chrysler policy's "Other Insurance" clause provides that "[f]or any covered 'auto' you own, this Coverage Form provides primary insurance[;]" it also contains a pro rata share provision in the event the Chrysler policy and any other policy "covers on the same basis, either excess or primary . . . . "

The language of both policies is clear and unambiguous and, when applied to the facts of this case, produces consistent results.  Swank was driving a vehicle not owned by her at the time of her accident with May.  Furthermore, based on our earlier conclusion, the Chrysler policy provides collectible insurance other than Swank's Farmers policy.  Thus, pursuant to the Farmers "Other Insurance" provision, the Farmers insurance is excess over the Chrysler insurance.  The Chrysler policy, on the other hand, states clearly that, for any covered auto "you own," it provides primary insurance.  "You" is defined as the named insured, Haggarty, and it is undisputed that Haggarty owned the vehicle Swank was driving at the time of the accident.  Thus, pursuant to its terms, the Chrysler policy provides primary coverage.

Chrysler contends that, because its policy does not afford coverage to a Haggarty permissive use customer operating a Haggarty-owned vehicle who has her own policy, the vehicle was not a "covered auto" under the terms of the policy.  This contention is not further developed, explained or supported.  Having concluded above that the Chrysler policy must extend coverage to Swank, we need not attempt to decipher the meaning of this contention or address it further.

Chrysler also contends that the pro rata share provision in its policy is applicable by its terms and pursuant to Bill Atkin Volkswagen.  First, we observe that Chrysler characterizes its policy as providing that "if there is other insurance for an accident, that Chrysler will not be 'primary,' but instead it will pay pro rata with the other company."  The actual policy language differs significantly from Chrysler's paraphrasing of it, however; it states that "[w]hen this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share."

(Emphasis added.) We concluded above that, pursuant to the plain language of both policies, the Chrysler policy provides primary coverage and the Farmers policy provides excess coverage. Thus, this case does not involve two policies covering "on the same basis, either excess or primary" and, therefore, the pro rata share provision in the Chrysler policy is inapplicable. Moreover, the Bill Atkin Volkswagen discussion of pro rata sharing is inapposite here. There, we held that where both the vehicle owner's policy coverage and the operator's policy coverage are excess with respect to a particular event, each insurer is liable for a pro rata share of the loss. Bill Atkin Volkswagen, 689 P.2d at 1242. Again, because the Farmers and Chrysler policies do not provide coverage on the same basis, a pro rata sharing of coverage does not result here. Based on the plain language of the two policies, we conclude that Chrysler must provide primary coverage to Swank up to its policy limits, with Farmers responsible for excess coverage.

We hold that the District Court erred in granting Chrysler's motion for summary judgment.

As a final matter, we observe that, where all of the facts bearing on the resolution of the legal issues are before us, this Court has the power to reverse a district court's grant of summary judgment and direct it to enter summary judgment in favor of the other party. Matter of Estate of Langendorf (1993), 262 Mont. 123, 128, 863 P.2d 434, 438; Duensing v. Traveler's Companies (1993), 257 Mont. 376 386, 849 P.2d 203, 210. The material facts in this case are undisputed and, indeed, both parties moved for summary judgment in the District Court on that basis. For the reasons set forth herein, we hold that Swank is entitled to summary judgment.

Reversed and remanded for entry of summary judgment in Swank's favor consistent with this opinion.

/S/  KARLA M. GRAY

We concur:

/S/  J. A.  TURNAGE
/S/  WILLIAM E. HUNT, SR.
/S/  JIM REGNIER
/S/  JAMES C. NELSON
/S/  TERRY N. TRIEWEILER
/S/  W. WILLIAM LEAPHART