No. 99-498

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 174N

GLEN WEBSTER,

Plaintiff/ Appellant,

v.

GEICO INSURANCE COMPANY,

Defendant/ Respondent.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Glen Webster, Monarch, Montana, *pro se*

For Respondent:

Jeffrey T. McAllister, Conklin, Nybo, LeVeque & Lanning, Great Falls, Montana

_____

Submitted on Briefs: October 7, 1999

Decided: July 6, 2000

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

1. ¶Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

2. ¶The Plaintiff, Glen Webster (Webster) brought this action *pro se* in the Eighth Judicial District Court, Cascade County, to recover damages from the Defendant, Geico Insurance Company (Geico) for alleged fraud, breach of contract, libel/slander (defamation), bad faith/unfair claims settlement practices, negligence, and infliction of emotional distress. The District Court held that the statute of limitations barred Webster's claims and granted Geico's motion for summary judgment. Webster appeals from the order granting summary judgment in favor of Geico. We affirm.

3. ¶The dispositive issue on appeal is that Webster's alleged claims against Geico are now barred by the statutes of limitations.

## FACTUAL BACKGROUND

1. ¶On March 16, 1991, Webster purchased a 1986 jeep pickup (jeep). Webster financed his jeep through First Security Bank of Idaho (First Security). By the terms of the financing agreement, Webster was required to carry property insurance on the jeep payable to First Security in the event the jeep was damaged or destroyed. Various policies were instituted with insurance companies Colonial Penn, Geico, Farmer's Insurance Company, and First Security's blanket insurer, Balboa. Policies were canceled for non-payment of premiums, by Webster's allowing one policy to lapse after applying to another insurer for coverage, and by denial of coverage.

2. ¶The policy purchased through Geico was purchased on or about July 3, 1991. Although Geico shortly thereafter informed Webster it was denying his application

and refunded him a portion of his premium, Webster had a policy in effect with Geico from July 3, 1991 until September 2, 1991. Disagreement exists, however, between Webster and Geico over whether the policy was comprehensive or liability only.

3. ¶On July 10, 1991 Webster's jeep was stolen from his residence and driven over a steep embankment. The jeep sustained severe damage. It was unclear which insurer, if any, would cover the loss, as it was unclear whether any of the various insurance policies were in effect when the jeep was stolen.

4. ¶Prior to liability on the part of any or all of the insurance companies being determined, Webster stopped payment on the check written to First Security for the July, 1991 payment. After that, Webster made no further payments on his obligation.

5. ¶In August of 1991, First Security contacted Webster stating they would retrieve the jeep and sell it as parts. Webster was notified by a letter dated August 28, 1991, that the jeep, "which has been repossessed," would be sold at private sale unless he redeemed within ten days. Webster was notified by a letter dated September 19, 1991, that First Security has applied for "repossession title" on the jeep. The jeep was not redeemed, but was sold at private sale with the proceeds of the sale being applied to the loan obligation with First Security. A balance remained on the loan.

6. ¶First Security's blanket insurer, Balboa, eventually paid a portion of the loss of the jeep based on its value to First Security. In October of 1992, having determined that its coverage was in effect when the jeep was stolen, Colonial Penn Insurance tendered payment to First Security for the balance owing on the account. The balance owing on the account, however, was misquoted by First Security. The quoted balance was actually $298.07 less than the actual balance. Therefore, following payoff by Colonial Penn, a balance remained on the account. This balance was internally charged off by First Security as uncollectible. First Security did not notify Webster of the deficiency in the payoff or attempt to further collect on the balance from him.

7. ¶On October 31, 1991, the charged off repossession of the jeep was reported to credit services via credit reporting tape. In December of 1991, Webster was denied credit due to his credit report. The credit denial listed the reasons for denial including repossession, collection action, and unfavorable or derogatory credit history.

8. ¶Webster contacted First Security June 2, 1997, regarding the balance on the account. At that time, an employee of First Security stated that he was entering a check in the amount of $298.07 as payment for the balance owing on the account. Following entry of "payment" for the balance of the account, First Security notified

the credit reporting agencies to delete the account data.

9. ¶In July of 1991, Webster filed a claim with Geico for the theft of and damage to the jeep. Shortly thereafter, Geico denied that Webster had coverage and refused to pay on Webster's claim. No facts exist of any continued dealings between Webster and Geico regarding coverage for the theft of the jeep.

10. ¶On July 30, 1997, Webster filed this action against Geico in an attempt to recover damages resulting from Geico's denial of insurance coverage and refusal to pay him for his stolen jeep. The District Court granted Geico's motion for summary judgment holding that the statute of limitations barred Webster's claims and entered judgment for Geico.

## STANDARD OF REVIEW

1. ¶Summary judgment is properly granted when no issues of material fact exist and the movant is entitled to judgment as a matter of law. Rule 56, M.R.Civ.P.; O'Bagy v. First Interstate Bank (1990), 241 Mont. 44, 46, 785 P.2d 190, 191. The movant has the initial burden of demonstrating the absence of a genuine issue of fact. *O'Bagy*, 241 Mont. at 46, 785 P.2d at 191. Once the movant has met its burden the opposing party must show the existence of a genuine issue of fact without relying upon mere speculation or conclusory statements. First Sec. Bank of Bozeman v. Jones (1990), 243 Mont. 301, 303, 794 P.2d 679, 681.

2. ¶We review a district court's decision on summary judgment *de novo* and apply the same Rule 56, M.R.Civ.P., criteria used by that court. Swank v. Chrysler Ins. Corp. (1997), 282 Mont. 376, 379, 938 P.2d 631, 633. Usually, we start our analysis with whether the movant met its burden. *Swank*, 282 Mont. at 379, 938 P.2d at 633. In this case, however, the material facts are undisputed. Therefore, we will confine our review to the District Court's conclusions of law. We review a district court's conclusions of law to determine whether they are correct. *Swank*, 282 Mont. at 379, 938 P.2d at 633.

## DISCUSSION

1. ¶Did the District Court err in holding that Webster's alleged claims against Geico are barred by the statutes of limitations?

2. ¶Generally, the statute of limitations begins to run from the time that the cause of action accrues. Section 27-2-102(2), MCA. Ignorance of a legal claim or its accrual does not toll the beginning of the period of limitation unless there is either some

affirmative concealment of the injury or the injury is by its nature self-concealing. Section 27-2-102(2), MCA; Wisher v. Higgs (1993), 257 Mont. 132, 140, 849 P.2d 152, 157, *overruled on other grounds by* Blackburn v. Blue Mountain Women's Clinic (1997), 286 Mont. 60, 75, 951 P.2d 1, 10. Further, we have held that neither ignorance of the law nor the needs for time to present a *pro se* case constitutes an adequate excuse to disregard a statute of limitations. *Cf.* In re Petition of Gray (1995) 274 Mont. 1, 2, 908 P.2d 1352, 1352.

3. ¶The alleged injuries suffered by Webster occurred in 1991, but Webster failed to file suit against Geico until July, 1997. The statute of limitations for bringing an unfair claim settlement practices suit is two years from the date of the violation. Section 33-18-242(7)(a), MCA. Unless otherwise provided for, the statute of limitations for bringing a tort action is three years. Section 27-2-204, MCA. While Webster slumbered upon his rights for six years, time expired on his claims.

4. ¶Webster presents no recognizable legal argument on appeal for why this Court should disregard the applicable statutes of limitations. Webster offers no evidence of neither active concealment by Geico nor that his injury was self-concealing. In fact, Webster admits knowledge of his injury in 1991. Webster only requests that we disregard the applicable statutes of limitations because he is a *pro se* litigant.

5. ¶The District Court was correct in granting Geico's motion of summary judgment. Webster failed to bring this action before the expiration of the appropriate statutes of limitations.

6. ¶The District Court is affirmed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER