No. 99-168

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 287

302 Mont. 209

14 P.3d 487

INFINITY INSURANCE COMPANY,

Plaintiff and Respondent,

v.

HOLLY DODSON, KORTNEE AZURE,

MARTHA VANNATTA, Personal Representative

of the Estate of Jessica Vannatta, deceased,

and JOSH SHELSTAD,

Defendants and Appellants.

APPEAL FROM: District Court of the Twelfth Judicial District,

In and for the County of Hill,

The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

William Conklin, Conklin, Nybo, LeVeque & Lanning, Great Falls, Montana (Vannatta); Chris R. Young, Havre, Montana (Dodson and Azure)

For Respondent:

Paul R. Haffeman, Dennis Tighe, Davis, Hatley, Haffeman & Tighe, Great Falls, Montana

Submitted on Briefs: August 19, 1999
Decided: November 16, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 The Appellants, Holly Dodson (Dodson), Kortnee Azure (Azure) and Martha Vannatta (Vannatta), appeal an order issued by the Twelfth Judicial District Court, Hill County, which granted summary judgment in favor of Infinity Insurance Company (Infinity). We affirm in part, reverse in part, and remand.

¶2 Dodson and Azure are jointly represented on appeal by the same counsel, while Vannatta is represented by her own counsel. Thus, two separate sets of briefs were filed by the parties referred to herein as the Appellants. Although framed differently, the issues on appeal can be consolidated and restated as follows:

> 1. Did the District Court err in granting Infinity Insurance Company's prayer for Interpleader?

> 2. Did the District Court err by not ruling that the policy issued by Infinity Insurance Company was ambiguous and therefore unenforceable?

> 3. Did the District Court err in determining that Montana's vehicle insurance omnibus statutes do not require separate, full coverage for multiple insureds where each insured is liable for independent acts of negligence?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 This case arose as the result of a December 7, 1997 one-car rollover accident near Havre, Montana, in which Dodson, Azure and Josh Shelstad were injured and the driver,

Jessica Vannatta, was killed.[1] The vehicle was owned by Paul R. Christeck (Christeck) and insured under his policy with Infinity, for the statutory mandatory minimum liability amount of $50,000 per accident involving two or more injured persons. Jessica Vannatta, an unlicensed 16-year-old with little driving experience, allegedly used Christeck's Ford Bronco with his permission on the day the accident occurred.

¶4 In the underlying action, Dodson, Azure, and Vannatta (Jessica's mother, who is serving as personal representative on behalf of Jessica's estate) alleged that Christeck negligently entrusted his motor vehicle to Jessica, and is therefore legally liable for their injuries. Dodson and Azure have further alleged that Jessica negligently operated Christeck's vehicle at the time of the accident, and is therefore legally liable for their injuries as well. (Shelstad did not appear and a judgment by default was entered against him.)

¶5 On November 16, 1998, Infinity and Vannatta moved for summary judgment, and on November 13, 1998, Dodson and Azure moved for declaratory judgment, which the District Court treated as summary judgment.

¶6 Relevant to the District Court's summary judgment inquiry were the terms of Christeck's policy with Infinity. Specifically, Christeck's policy provided him up to $50,000 in the event an "insured" was found legally liable for bodily injuries sustained in an accident involving more than one person. At issue, however, was whether this limit applied to not only him, but the driver (Jessica Vannatta) as well, meaning that Infinity by the terms of its policy would have to pay up to $50,000 on behalf of Christeck, and another $50,000 on behalf of Vannatta, for their separate acts of negligence. The Appellants maintained that the policy was ambiguous in defining "accident," and therefore should rightfully be construed in their favor. This theory was premised on the contention that Jessica Vannatta's negligence and Christeck's negligent entrustment constituted two separate "accidents" under the terms of the policy. Thus, Christeck's policy with Infinity should provide $100,000 total in liability coverage.

¶7 Another theory advanced by Appellants was that regardless of the language of the Infinity policy, state omnibus laws require that all insureds must carry the mandatory minimum coverage, including "permissive drivers" such as Jessica Vannatta. They contended that by limiting its liability to a maximum of $50,000 where more than one insured may be liable, the terms of Infinity's policy contravened state law as well as public policy under Montana's Motor Vehicle Safety-Responsibility Act. Appellants maintained

that under the undisputed facts, state law should be construed to require that $100,000 of liability coverage be made available to the injured parties under Christeck's policy with Infinity.

¶8 Infinity, on the other hand, in its May 6, 1998 Complaint for Interpleader, requested that upon payment of $50,000 into the court, it should be dismissed with prejudice as a party from all claims arising from the accident. Infinity recognized that its policy limit of $50,000 would be paid, and requested that the parties and court proceed (without Infinity as a named party) to determine to whom and in what amount.

¶9 Infinity claimed that both its policy as well as state law is clear: $50,000 is the total coverage available for one accident, and that the number of insureds found liable under these facts is irrelevant. The policy issued by Infinity to Christeck states:

> We will pay damages, except for punitive or exemplary damages, up to the policy limit shown on the Declarations Page, for which an insured person is legally liable because of bodily injury or property damage resulting from the ownership, maintenance or use of your insured car or non-owned car. The bodily injury or property damage must be caused by an accident and not be expected nor intended from the stand point of the insured person.

It is undisputed that under the policy both Christeck and Jessica Vannatta were an "insured." The policy later provides, however, that Infinity would not pay more than the maximum limit of liability regardless of the number of "insured persons."

¶10 Following a hearing, the District Court entered its order granting summary judgment to Infinity on February 1, 1999, which it certified as a final judgment pursuant to Rule 54 (b), M.R.Civ.P.

¶11 The court acknowledged that no facts were in dispute, and therefore what remained were purely legal determinations. The court first determined that the Infinity policy was not ambiguous. "Any reasonable person, with no legal training, but a working knowledge of the English language, is informed that no matter how many persons are considered insureds, and no matter how many people are injured in an accident, the policy limit is $50,000."

¶12 The court further stated that it would be "a stretch of the word 'accident' that in this

incident there were in fact two accidents that triggered separate coverage, i.e. the negligent entrustment and the rollover." Although the term "accident" was not expressly defined, the court observed that the policy provided that: "All bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered out of one (1) accident."

¶13 The court also took note of the policy provisions that stated that the $50,000 liability limit "is the maximum we will pay as damages for all bodily injury to two (2) or more persons in any one accident," and that Infinity would pay no more than this maximum regardless "of the number of vehicles described on the Declarations Page, insured persons, claims, or policies, or vehicles involved in the accident."

¶14 In construing Montana's mandatory vehicle insurance laws, the court stated that §§ 61-6-103 and 301, MCA, are not directed at insurance companies; rather, compliance is directed at vehicle users and owners, and therefore does not affect Infinity's obligations. The court concluded:

> In this instance, both the owner and the permissive user are clearly insured as required. Payment of the limit of the policy does not leave either uninsured, it exhausts the insurance amount. The required amount of insurance is provided. While the limit is probably too low for 1997-99 costs, it is what the legislature fixed. It is not for the courts to increase it by strained interpretations of the law.

¶15 The court granted Infinity's motion for summary judgment, and ordered that upon payment of $50,000 to the court, Infinity would be dismissed as a party, and that its prayers for relief under its Complaint for Interpleader were granted.

¶16 This appeal followed.

## STANDARD OF REVIEW

¶17 This Court reviews an order granting summary judgment under Rule 56, M.R.Civ.P., by utilizing the same criteria as the district court. *See Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. Summary judgment is a remedy which should be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), M.R.Civ.P. The procedure should never be substituted for trial if a material factual controversy exists. *See Payne*

*Realty v. First Sec. Bank* (1992), 256 Mont. 19, 24, 844 P.2d 90, 93.

¶18 When we review a district court's conclusions of law, our standard of review is plenary and we must determine whether the court's conclusions are correct as a matter of law. *See Hicklin v. CSC Logic, Inc.* (1997), 283 Mont. 298, 301, 940 P.2d 447, 449.

## DISCUSSION

¶19 Appellants' challenge to the District Court's interpretation of Montana's Motor Vehicle Safety-Responsibility Act, enacted by the Legislature in 1951, raises a question of first impression: whether each insured under one policy, who are both found legally liable for causing one accident, must each be covered by the mandatory limits provided under § 61-6-103, MCA. In light of the unwavering principles that the Act serves to protect the "general traveling public" from uncompensated injury (*see Iowa Mut. Ins. Co. v. Davis* (1988), 231 Mont. 166, 173, 752 P.2d 166, 171), and that its omnibus provisions must be "liberally construed so as to effectuate the manifest public policy of broadening the insurance coverage" (*see Cascade Ins. Co. v. Glacier Gen. Ins. Co.* (1971), 156 Mont. 236, 242, 479 P.2d 259, 262), we must determine whether the ends of these principles justify imposing a greater financial obligation on vehicle insurers, as well as insureds, than has previously been presumed.

¶20 By no means has this question been settled elsewhere, in other states where legislatures have similarly mandated that all vehicle owners carry minimum levels of liability insurance to cover the damage inflicted on persons and property resulting from accidents. To the contrary, a sharp polarity exists from jurisdiction to jurisdiction where divided courts have been obliged to construe fairly uniform legislation governing mandatory liability insurance that includes coverage for permissive users of an owner's vehicle. *See GRE Ins. Group v. Green* (Ariz.Ct.App. 1999), 980 P.2d 963, 966 (holding that omnibus statute requiring $15,000 minimum per-person coverage did not require insurer to provide separate limits of liability for permissive user for negligently causing accident and named insured for negligent entrustment leading to same accident so that one injured party may recover twice statutory minimum); *but see Iaquinta v. Allstate Ins. Co.* (Wis.Ct.App. 1993), 510 N.W.2d 715, 717-18 (concluding that pursuant to omnibus statute insurer must provide separate coverage up to the policy limit of $25,000 per person on behalf of both the owner and the permissive user, thereby providing up to $50,000 for injuries sustained by one person).

¶21 With this in mind, we first proceed to the two preliminary issues.

## *Issue 1.*

*Did the District Court err in granting Infinity Insurance Company's prayer for Interpleader?*

¶22 Appellants raise the legal question of whether the District Court, by granting Infinity's prayer for interpleader in its entirety, infringed on their rights to seek further relief under Montana law after the $50,000 in insurance proceeds is distributed.

¶23 Infinity, in its Complaint for Interpleader, requested an order "enjoining and restraining each and all of the defendants from instituting or prosecuting further any proceeding on account of the incident or the insurance policy." Aside from this one request, the remainder of its prayers for relief pertained specifically to the release of Infinity from further claims in this matter--thus, it is unclear whether Infinity specifically requested additional relief for other parties. In addition to granting its motion for summary judgment, the District Court granted the relief sought by Infinity's interpleader without comment, and the summary judgment was certified as a final judgment pursuant to Rule 54 (b), M.R.Civ.P.

¶24 Appellants argue that, regardless of the outcome of the issues on summary judgment, they are prejudiced in that they are technically enjoined from pursuing either Christeck, individually, or Vannatta's estate, once Infinity is released from all claims arising from the accident. We agree with Appellants that the measure of damage for negligence, notwithstanding available insurance proceeds, is the amount that will compensate the injured for all detriment proximately caused. The fundamental purpose of any tort remedy is to return the plaintiff to his or her rightful position, or "the position or state the party would have attained had the wrong not occurred." *Butler v. Germann* (1991), 251 Mont. 107, 110, 822 P.2d 1067, 1069. *See also* §§ 27-1-202 and 27-1-317, MCA.

¶25 It is not clear, however--and Infinity sheds no further light--on whether it, and subsequently the District Court, intended such a comprehensive exclusion of remedies. As a matter of law, pursuant to the principles of subject matter jurisdiction, the court should have only released Infinity from further claims, not the potentially liable individuals involved in this matter. *See generally Old Fashion Baptist Church v. Department of Revenue* (1983), 206 Mont. 451, 457, 671 P.2d 625, 628. Upon remand, the District Court

is instructed to clarify its order accordingly.

## *Issue 2.*

*Did the District Court err by not ruling that the policy issued by Infinity Insurance Company was ambiguous and therefore unenforceable?*

¶26 Appellants argue that Christeck's policy with Infinity is ambiguous, in that the term "accident" is not defined, and is therefore subject to more than one interpretation. Specifically, Appellants argue that Jessica Vannatta's alleged negligent driving, which caused the roll-over accident, and Christeck's alleged negligence in permitting Jessica to use his vehicle, constituted two separate "accidents" under Christeck's policy with Infinity, and therefore gave rise to separate coverage, each with a $50,000 limit. Infinity maintains its policy is plain and unambiguous.

¶27 A long-standing and often-cited rule in Montana is that an insurance policy must be interpreted according to what a reasonable person in the position of an insured would understand the language to mean. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Thompson* (1967), 150 Mont. 182, 187, 433 P.2d 795, 798. An ambiguity exists when "different persons looking at it in light of its purpose cannot agree upon its meaning." *Bauer Ranch, Inc. v. Mountain West Farm Bureau Mut. Ins. Co.* (1985), 215 Mont. 153, 156, 695 P.2d 1307, 1309. The complementary rule to the foregoing is that ambiguous provisions in insurance policies must be construed against the insurance company. *See Bauer Ranch*, 215 Mont. at 156, 695 P.2d at 1309.

¶28 As a preliminary matter, the policy unquestionably provides an absolute cap of $50,000 in the event more than one insured is found liable for an accident in which two or more persons are injured. On page three, the policy expressly provides that Infinity would not "pay more than the maximum limit of liability [$50,000] regardless of the number of: (b) insured persons." On page four, the policy further provides that "[r]egardless of the number of vehicles described on the Declarations Page, insured persons, claims or policies, or vehicles involved in the accident, we will pay no more than the limit of liability shown for this coverage on the Declarations Page for each person injured in any one accident." By including these provisions, we conclude that Infinity has made clear what Montana's mandatory vehicle liability insurance statutes have not.

¶29 We therefore conclude that the District Court correctly determined that under the terms of Infinity's policy, the maximum amount paid by the insurer remains constant--at

$25,000 per person and $50,000 per accident--and the fact that an accident involved multiple liable insureds is inconsequential.

¶30 Next, the District Court correctly determined that the term "accident" is not defined by the policy itself. We agree with the District Court, however, that a reasonable person in the position of an insured would understand that the term "accident"as used throughout the policy refers to a singular event where bodily injury or property damage results from the ownership, maintenance, or use of a vehicle. For example, the policy provides on page three that:

> All bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one (1) accident.

¶31 Thus, there was only one accident on December 7, 1997, and, accordingly, we conclude that the District Court was correct in determining that although more than one act of negligence may have contributed to this one accident, the maximum amount of coverage under the policy remained constant.

¶32 Whether such express limitations of liability in Infinity's policy with Christeck comport with state law is the subject of the final issue.

### Issue 3.

*Did the District Court err in determining that Montana's vehicle insurance omnibus statutes do not require separate, full coverage for multiple insureds where each insured is liable for independent acts of negligence arising from one accident?*

¶33 The Appellants contend that Montana's omnibus statutes[2] should be construed to require that where two insureds under one policy each are separately liable for injuries to two or more persons arising from one accident, the mandatory limit of $50,000 must, in effect, be doubled to fully cover both insured's negligence. Consequently, Appellants contend that if a provision in Infinity's policy excludes the mandatory liability limits for both insureds--i.e., $50,000 each for a total of $100,000--it would violate the public policy expressed in our case law interpreting the Motor Vehicle Safety Responsibility Act, and must therefore be deemed void as a matter of law.[3] As indicated, this is a question of first impression before this Court.

¶34 The relevant portion of Montana's omnibus statute under § 61-6-103, MCA, provides the following:

(2) The owner's policy of liability insurance must:

. . .

(b) insure the person named therein and any other person, as insured, using any motor vehicle or motor vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of the motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each motor vehicle, as follows:

(i) $25,000 because of bodily injury to or death of one person in any one accident and subject to said limit for one person;

(ii) $50,000 because of bodily injury to or death of two or more persons in any one accident; and

(iii) $10,000 because of injury to or destruction of property of others in any one accident.

In 1979, the foregoing coverage became mandatory for all vehicle owners in Montana under § 61-6-301(1)(a), MCA, which provides: "an owner of a motor vehicle that is registered and operated in Montana by the owner or with the owner's permission shall continuously provide insurance against loss resulting from liability imposed by law for bodily injury or death or damage to property suffered by any person caused by maintenance or use of a motor vehicle" in an amount not less than that required by § 61-6-103, MCA.

¶35 We agree with Appellants that our prior decisions interpreting insurance policies in the context of the foregoing statutes hold that policy language which excludes statutorily-mandated coverage is void as contrary to public policy. *See Allstate Ins. Co. v. Hankinson* (1990), 244 Mont. 1, 4, 795 P.2d 480, 482 (citations omitted). Further, we have declared that when an insurer fails to provide a policy in compliance with the requirements of a statute mandating insurance protection, the courts are forced to reform the policy so that it

is in compliance. *See Horace Mann Ins. v. Hampton* (1989), 235 Mont. 354, 358, 767 P.2d 343, 345 (citing 12A Couch on Insurance § 45:692 (rev.ed.)). This Court has also acknowledged that the omnibus coverage required by statute must be "liberally construed so as to effectuate the manifest public policy of broadening the insurance coverage." *See Cascade Ins. Co. v. Glacier Gen. Ins. Co.* (1971), 156 Mont. 236, 242, 479 P.2d 259, 262 (quoting *Jurd v. Pacific Indem. Co.* (Cal. 1962), 371 P.2d 569, 571).

¶36 The foregoing principle expressed in *Cascade* was recently applied in *Swank v. Chrysler Ins. Corp.* (1997), 282 Mont. 376, 938 P.2d 631, where this Court firmly established the rule that a vehicle owner's policy cannot deviate from the mandatory automatic omnibus coverage under §§ 61-6-103(2)(b) and 61-6-301(1)(a), MCA. The issue in *Swank* was whether a permissive driver, who was liable for damages in an accident, could be expressly excluded under a vehicle owner's policy if the permissive driver had her own insurance that covered the accident. In that case, a car dealer attempted to exclude "customers" who test drove its vehicles from its policy so long as the customers carried insurance which provided liability coverage for use of a "non-owner" vehicle. We held that the provision was contrary to public policy and unenforceable, because the language clearly excluded or limited the coverage mandated by § 61-6-301(1), MCA, as defined under § 61-6-103, MCA, for permissive operators of vehicles. *See Swank*, 282 Mont. at 383, 938 P.2d at 635.

¶37 In arguing that *Swank* is relevant here, Appellants contend that if Infinity pays the $50,000 limits on behalf of Christeck or Vannatta, then either Christeck or Vannatta, effectively, will be "excluded" from coverage as mandated by §§ 61-6-103 and 301, MCA. Thus, as a matter of law, §§ 61-6-103 and 301, MCA, require that Infinity must provide the statutory limits for both insureds. Appellants contend that such a liberal statutory interpretation is required under the public policy of broadening insurance coverage to effectively protect the traveling public injured in vehicle accidents.

¶38 The District Court disagreed with Appellants' generous interpretation of § 61-6-103(2)(b), MCA, and determined that the statute refers to each *accident*, not each separate act of negligence that may have contributed to causing the accident. The court determined that, as a matter of law, once the injured persons' damages resulting from the one accident exhaust the $50,000 policy limit, the insurer's obligation to cover any further claims ceases. The District Court reasoned that, in this instance, regardless of Christeck's and Jessica Vannatta's alleged independent acts of negligence, the most liability coverage mandated under state law is $50,000 where two or more persons are injured--a level of

coverage which Christeck's policy with Infinity undisputedly provides. The court concluded that "[w]hile the limit is probably too low for 1997-99 costs, it is what the legislature fixed. It is not for the courts to increase it by strained interpretations of the law."

¶39 This conclusion closely followed the dissenting opinion in *Haislip v. Southern Heritage Ins. Co.* (Va. 1997), 492 S.E.2d 135, a case relied on by Appellants, where the Supreme Court of Virginia, in a 4-3 split decision, held that the insurer must provide the same mandatory $25,000-per-person coverage for both the permissive user and the named insured. *See Haislip*, 492 S.E.2d at 138 (Compton, J., dissenting) (stating that "the liability limits are per accident, not per act of negligence" and quoting *Helmick v. Jones* (W.Va. 1994), 452 S.E.2d 408, 411). The District Court's conclusion accords not only with the dissent in *Haislip*, but also several other courts that have construed omnibus statutes whose language is nearly identical to Montana's. *See, e.g., GRE Ins. Group v. Green* (Ariz. Ct.App. 1999), 980 P.2d 963, 966; *Manriquez v. Mid-Century Ins. Co. of Texas* (Tex.App. 1989), 779 S.W.2d 482, 485 (concluding that the fact that two defendants are being sued does not enlarge $50,000 liability limitation to $100,000).

¶40 Although we ultimately agree with the District Court's determination, we conclude that the court, in flatly dismissing the on-point Virginia decision, failed to reveal the requisite analysis statutory interpretation requires under Montana law. Under these circumstances, it is paramount that the Legislature's intent be scrutinized where $50,000 in liability coverage conceivably may double merely by a vehicle owner handing his keys to another person, who then drives negligently.

¶41 As interpreted by the Virginia Supreme Court--and argued by Appellants--the term "and" in such an omnibus statute is unambiguous. *See Haislip*, 492 S.E.2d at 137-38. Virginia's statute, similar to § 61-6-103(2)(b), MCA, requires that all vehicle insurance policies provide coverage to the "named insured, *and* any other person using or responsible for the use of the motor vehicle . . . ." Va.Code Ann. § 38.2-2204 (emphasis added). The Virginia court reasoned that:

> The General Assembly's use of the word "and" in Code § 38.2-2204(A) means that Southern Heritage is required to provide insurance coverage to both Price, who is the name insured, and Goode, who was driving the motor vehicle with Price's consent.

*Haislip*, 492 S.E.2d at 137. The facts in *Haislip* are nearly identical to those here: allegedly, the named insured, Price, negligently entrusted her vehicle to Goode, who in turn negligently operated the vehicle causing injury to a third party, Haislip. The court ultimately declared that the insurer, Southern Heritage, must "provide a maximum of $25,000 in coverage for any claim that Haislip may make against Price in addition to the $25,000 that Southern Heritage has already paid to settle Haislip's claims against Goode." *Haislip*, 492 S.E.2d at 138.

¶42 Appellants here contend that Montana's omnibus statute similarly requires that where two or more persons are injured "in any one accident," an owner's policy of liability insurance must insure the named insured *and* any other person "against loss from liability imposed by law for damages" for $50,000. Appellants argue that this Court should therefore follow *Haislip*, and adopt the approach of other state courts which have interpreted similar omnibus statutes to require separate, full coverage in cases where both the owner *and* the permissive user are "actively negligent." *See Iaquinta v. Allstate Ins. Co.* (Wis.Ct.App. 1993), 510 N.W.2d 715, 717-18 (concluding that insurer must, pursuant to omnibus statute, provide separate coverage up to the policy limit of $25,000 per person on behalf of both the owner and the permissive user, thereby providing up to $50,000 for injuries sustained by one person); *accord, Miller v. Amundson* (Wis.Ct.App. 1984), 345 N.W.2d 494.

¶43 We are, however, not entirely persuaded by the Virginia court's approach to statutory interpretation intended to achieve the elusive "intention of the legislature."

¶44 Apparently, the Virginia General Assembly was not persuaded, either. In 1999, the Assembly tacked on the following amendment to the omnibus statute: "however, nothing contained in this section shall be deemed to prohibit an insurer from limiting its liability under any one policy for bodily injury or property damage resulting from any one accident or occurrence to the liability limits for such coverage set forth in the policy for any such accident or occurrence *regardless of the number of insureds under that policy.*" Va.Code Ann. § 38.2-2204 (1999) (emphasis added).

¶45 This is not to say that those jurisdictions that have arrived at the same conclusion as the District Court here, have utilized more thorough methods. For example, under the guise of interpreting its legislature's intent, an Arizona court of appeals reached the exact opposite conclusion as the Virginia court in construing a nearly identical omnibus statute. *See GRE Ins. Group v. Green* (Ariz.Ct.App. 1999), 980 P.2d 963. A portion of the court's

analysis reveals the problem:

> There is nothing in the language of the statute, nor do we find any other authority, that supports the argument that the statute requires insurers to cover the permissive user for negligently causing the accident and the named insured for negligent entrustment leading to the same accident so that one injured party may recover twice the statutory minimum. Rather, *it seems that the intent of the statute* is that, whether the named insured or a permissive user is operating the vehicle and causes the accident, the policy must provide at least $15,000 in coverage for each injured person subject to the overall per-accident limit.

*GRE*, 980 P.2d at 966 (emphasis added). While this end result accords with the District Court's determination here, we conclude that *intent* simply cannot be inferred from whatever the statutory language "seems" to mean.

¶46 Unlike the Virginia and Arizona courts, we are bound by the more stringent mandate that "the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA; *Farmers Alliance Mut. Ins. Co. v. Holeman* (1996), 278 Mont. 274, 277, 924 P.2d 1315, 1317. Further, statutory language must be construed according to its plain meaning and, if the language is clear and unambiguous, no further interpretation is required. *Dahl v. Uninsured Employers' Fund*, 1999 MT 168, ¶ 16, 295 Mont. 173, ¶ 16, 983 P.2d 363, ¶ 16 (citation omitted). In construing a statute, this Court must also read and construe each statute as a whole so as to avoid an absurd result "and to give effect to the purpose of the statute." *Christenot v. Department. of Commerce* (1995), 272 Mont. 396, 401, 901 P.2d 545, 548. If the plain words of a statute are ambiguous, however, the next step in judicial interpretation of the statute is to determine the intent of the legislature. *See Montana Contractors' Ass'n, Inc. v. Department of Highways* (1986), 220 Mont. 392, 394, 715 P.2d 1056, 1058. This is accomplished by examining the legislative history of the statute, including the title of the original bill. *See Montana Contractors' Ass'n*, 220 Mont. at 394, 715 P.2d at 1058; *Gaub v. Milbank Ins. Co.* (1986), 220 Mont. 424, 428, 715 P.2d 443, 445. Further, when determining legislative intent, our interpretation must be reasonable. *See* § 1-3-233, MCA; *Grossman v. State Dep't of Natural Resources* (1984), 209 Mont. 427, 451, 682 P.2d 1319, 1332. Accordingly, it would be injudicious for this Court to follow jurisdictions where the intent of an entire statute turns on the word "and" or its intent is construed by what it "seems" to mean.

¶47 Our review of the plain language of the Motor Vehicle Safety-Responsibility Act leads us to conclude that if in fact the Legislature ever wished to allow such a double-recovery system, it has never expressly provided the necessary language for such an interpretation. Then again, § 61-6-103, MCA, read as a whole, does not definitively prohibit such a recovery. In other words, Appellants' argument, in light of the strong policy for liberally construing statutes designed to protect the innocent public, cannot be dismissed as mere "sophistry," a label the District Court used in describing the Virginia court's decision in *Haislip*.

¶48 What is clear from the plain language of § 61-6-103(2)(b), MCA, is that an "owner's policy" must provide a base amount of insurance coverage of $25,000-per-person, $50,000-per-accident, and $10,000 for property damage when persons or property are injured by another person's use of a vehicle in Montana. The operative language in this statute, however, requires that the foregoing is: "*subject to limits exclusive of interest and costs, with respect to each motor vehicle. . . .*" Thus, each vehicle in Montana--not each insured--must be cloaked by the foregoing mandatory limits in the event *it* causes damage to persons or property, regardless of who is behind the wheel.[(4)] Accordingly, this Court cannot give effect to any purpose beyond this language.

¶49 As indicated, the central issue raised here strikes at the heart of a particular ambiguity, one which obviously has led other courts to reach contrary conclusions. To this end, our review of the legislative history, as well as case law from other states that have adopted a similar act, is at best inconclusive.

¶50 We can find no evidence that the Montana Legislature ever contemplated, let alone wished to require, that the minimum limits of liability under § 61-6-103, MCA, could or should be increased depending on the number of insureds found legally liable for causing one accident. The overall purpose of the Act, as stated in its original title, was for the "elimination of reckless and irresponsible drivers of motor vehicles from the highways of the state of Montana." *See Boldt v. State Farm Mut. Auto. Ins. Co.* (1968), 151 Mont. 337, 340-43, 443 P.2d 33, 35-36 (describing "general legislative intent in enacting the financial responsibility provisions of the Motor Vehicle Safety Responsibility Act"). This intent--to shield the public from reckless and irresponsible drivers--is expressed under the "each motor vehicle" limitation under § 61-6-103(2)(b), MCA, meaning each vehicle, regardless of ownership, must be covered by the mandatory liability limits when in use on the roadways of Montana.

¶51 Since enacted in 1951, what is now § 61-6-103(2)(b), MCA (formerly § 53-438, RCM), has been amended numerous times. The amendments, however, primarily focussed on increasing the mandatory liability from the original $5,000-per-person, $10,000-per-accident, and $1,000 property damage limits, and passed through the legislative process with little comment concerning the overall intent of such mandatory limits. The last such increase occurred in 1989. The $50,000-per-accident limit, however, has remained unchanged since 1975.

¶52 Finally, other jurisdictions have obviously arrived at opposite conclusions with no reference at all to their respective legislatures' hearing minutes or committee reports--and, accordingly, are instructive but not persuasive.

¶53 Therefore, we hold that it would be in error for this Court to construe the statute in such a way that we ultimately question, rather that resolve, our Legislature's intent. To do so would require us to insert a particular and precise meaning that has been omitted, contrary to the edicts of § 1-2-101, MCA. If the Legislature wishes to clearly mandate such a requirement, it may do so; or, like Virginia's General Assembly, it may wish to constrict this apparent loophole in the statutory language.

¶54 Therefore, the District Court's conclusion that, pursuant to the Motor Vehicle Safety-Responsibility Act, Infinity is obligated to pay the $50,000 policy limit on behalf of its insureds--and no more--is affirmed.

¶55 Accordingly, this case is remanded for further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

¶56 Justice William E. Hunt, Sr., dissents from the majority opinion.

¶57 I believe that under the language of the statute and of the policy both Vannatta and Christeck are insured persons under the policy. Infinity, as the insurer, should be responsible to provide coverage up to the limits of the policy for each of the insureds individually.

Section 61-6-103(2), MCA, provides in relevant part:

(B) The owner's policy of liability insurance must . . . *insure the person named therein and any other person, as insured,* using any motor vehicle or motor vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of the motor vehicle . . . with respect to each motor vehicle, as follows:

(i) $25,000 because of bodily injury to or death of one person in any one accident and subject to said limit for one person;

(ii) $50,000 because of bodily injury to or death of two or more persons in any one accident; and

(iii) $10,000 because of injury to or destruction of property of others in any one accident. (Emphasis added.)

¶58 Christeck's policy with Infinity appears to comply with the statute. Christeck, as the named insured, is entitled to liability coverage under the policy agreement at page 2 which reads:

> We will pay damages . . . up to the policy limits shown on the Declarations Page, for which an insured person is legally liable because of bodily injury or property damage resulting from the ownership, maintenance or use of your insured car or a non-owned car. The bodily injury or property damage must be caused by an accident and not be expected nor intended from the standpoint of the insured person.

Negligent entrustment is conduct which clearly falls within the parameters of the policy as an unintended consequence resulting from the ownership of the car. In addition, Vannatta appears to be entitled to insurance under Christeck's policy falling under the definition of

an insured person. The definition of insured persons is found on the same page of the policy:

> As used in this Part "insured person" or "insured persons" means with respect to your insured car:
>
> (1) you.
>
> (2) any other person using your insured car with your express or implied permission to do so.

¶59 In limiting the coverage, the majority opinion does not address the issue of which party is insured under the policy in this kind of situation. The use of the word "and" in the statute means that the policy should provide both with insurance coverage as required. Their construction of the contract and the statute ultimately leaves one of the two negligent parties uninsured. This is puzzling, since the parties are statutorily required to have insurance and since they both appear to be insured under the policy.

¶60 If Vannatta is fully covered under the policy, as required by statute, then her liability must be assumed by the insurance company up to the limits of the policy. As the named policy-holder Christeck should be entitled to the same amount of coverage under the policy. Under the majority's interpretation, only one of the two is fully insured as required by the statute. The limits of liability coverage should apply fully and separately to both Christek, for negligent entrustment, and to Vannatta, for negligent operation of the vehicle. In instituting the permissive user coverage requirement under the financial responsibility laws, the legislature surely didn't intend to leave persons who complied with the law open to additional liability.

¶61 The language of both the policy and the statute imply that both Christeck (as the owner of the vehicle) and Vannatta (as a permissive user) are fully insured in the event that their negligence triggers liability to third parties. Under the majority's approach, however, this is not the case. There are three possibilities: Christeck is insured, Vannatta is insured or they're both under-insured by half of the policy limits, which is contrary to the statute. Public policy would seem to require that the insured parties be each *individually* entitled to coverage up to the full amount of the policy limit.

¶62 The state legislature has created mandatory liability statutes for exactly this reason. If

someone is either an owner of a car or is operating a car he or she has a responsibility to third parties who might become injured as a result. The statute expressly requires that both the named insured *and* permissive users be insured under a policy. Paul Christeck and Jessica Vannatta complied with the statute and have been left with half of what was promised.

/S/ WILLIAM E. HUNT, SR.

Justice Terry N. Trieweiler concurs in the dissent by Justice Hunt.

/S/ TERRY N. TRIEWEILER

1. Martha Vannatta, Jessica's mother and personal representative of her daughter's estate, does not admit that Jessica was driving, but for the purposes of this appeal is willing to proceed under the assumption that Jessica was driving at the time the accident occurred.

2. The term "omnibus" by definition refers to an automobile-insurance policy provision that automatically extends coverage to all drivers operating the insured vehicle with the owner's permission. The statutes in question, §§ 61-6-103(2)(b) and 61-6-301, MCA, require that all policies provide this extended coverage.

3. It follows from this argument that, conceivably, more than two insureds could be found liable, thus boosting the available insurance recovery to $150,000 or more. *See Cascade Ins. Co. v. Glacier Gen. Ins. Co.* (1971), 156 Mont. 236, 244-45, 479 P.2d 259, 263 (concluding that vehicle owner's son, a permissive driver, may in turn permit another person to use vehicle, who is then entitled to full coverage under owner's policy).

4. The exception to this rule, under § 61-6-103(2)(b), MCA, is a person who drives an owner's vehicle *without* express or implied permission. This exception, however, is not at issue.